**UNITED STATES, Appellee,**

v.

**Douglas E. COTTLE, Airman First Class, U.S. Air Force, Appellant.**

**No. 41073.**
**ACM 22748.**

U. S. Court of Military Appeals.

Dec. 6, 1982.

For Appellant: Captain Thomas S. Markiewicz (argued); Colonel George R. Stevens (on brief); Major Wade B. Morrison.

For Appellee: Captain Michael J. Hoover (argued); Colonel James P. Porter (on brief).

## OPINION OF THE COURT

COOK, Judge:

Tried by general court-martial, the accused was convicted, despite his pleas, of possessing amphetamine, cocaine, and heroin, selling and using cocaine, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively. The approved sentence extends to a dishonorable discharge, confinement at hard labor for 2 years, forfeiture of $100.00 pay per month for 24 months, and reduction to airman basic. The Court of Military Review dismissed one specification of selling cocaine and reduced the dishonorable discharge to a bad-conduct discharge, but otherwise affirmed the findings and sentence. 11 M.J. 572 (1981).

This Court granted three issues, 11 M.J. 413 (1981), but two have been resolved adversely to the accused by our decision in *United States v. Ettleson,* 13 M.J. 348 (C.M.A.1982). The remaining issue is:

WHETHER THE MILITARY JUDGE ERRONEOUSLY DENIED THE APPELLANT'S REQUEST FOR TWO WITNESSES.

The facts underlying this issue appear as part of a defense motion to dismiss for lack of speedy trial. The defense contended that the fact that the two witnesses were unavailable at the time of trial was part of the prejudice allegedly suffered by the accused because of delay in referring the case to trial after completion of the Article 32, UCMJ, 10 U.S.C. § 832, hearing. When the motion was made, the military judge sought more information about the two witnesses. Defense counsel asserted that he had interviewed the witnesses on the 23rd of October, 1979, in expectation of their becoming witnesses in the event the case came to trial. However, it was not until five days after the case was referred to trial on January 23, 1980, that a specific request for their production was made. A second request was made on January 31, 1980, which provided more information as to their expected testimony.[1] This request was denied by trial counsel. When the case came before the military judge for an Article 39(a)[2] hearing, the request was renewed. *See* para. 115, Manual for Courts-Martial, United States, 1969 (Revised edition). There trial counsel opposed the request because the contents of their statements indicated "that they [would] do nothing more than attempt to prove misconduct which would be collateral matters to the offenses here."[3] Defense counsel then cited our decision in *United States v. Barnes,* 8 M.J. 115 (C.M.A. 1979), for the proposition that "evidence of [a] prosecution witness' acts involving drugs in a drug case, even though those acts did not involve convictions" would be admissible for attacking the credibility of the witness. Defense counsel also explained his delay in requesting the witnesses in this manner:

Certainly the information asked has bearing, and certainly their statements themselves present evidence of the fact that the government's witness had made prior inconsistent statements. As to whether it is admissible or not is a moot point. It is a moot question at this point. The fact

---

1. The second request was in response to a request from trial counsel for more information. The statement of Thomas was not received until February 1, 1980. A third witness, now a civilian, was provided in accord with the defense request.

2. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

3. Trial counsel acknowledged that Hoes would deny involvement with drugs other than hashish in contradiction to the statements.

is that they were here and they are gone. As to whether our request was timely or not I don't know whether that is going to enter into it or not. Our position is the defense has no obligation to request witnesses prior to the time the case is referred and that is assuming that it is going to be referred that is a fait accompli, and regardless of how the case looks to suggest that we should make requests for witnesses or make known witnesses prior to time that a case is actually referred presupposes a referral.

Defense counsel continued to couch his witness request in terms of delay in going to trial.[4] After hearing testimony on the defense motion, the military judge found that the accused had "suffered no prejudice" by the delay and denied the motion. However, he recognized "a substantial contradiction" between the statements submitted and what the defense had averred as to how the witnesses would testify if they were in court. He recessed the court to give "defense counsel . . . an opportunity to submit to me in writing exactly what it is they expect these witnesses to testify concern-

ing." After the recess, defense counsel informed the military judge that "what we expect from them actually is included in the statements which have already been presented to the court."[5] The military judge then asked whether defense counsel was requesting that "these witnesses be produced to testify as to their statements?" Counsel responded in the affirmative, but the military judge deferred his ruling. After other matters were resolved, the military judge again returned to the witness issue:

> MJ: Mr. Slavens [civilian counsel], prior to ruling I will ask you one more question. I would like you to be very specific in your answer if you can. How is it that the testimony expected from these two witnesses as represented in these statements, how is it that that testimony goes to issues on the merits as opposed to issues in relation to impeachment?
>
> IDC: Directly sir, we believe that the testimony of the witnesses will show that the witness had direct contact and

---

4. After trial counsel argued that the expected testimony went only to impeachment and was collateral to the merits of the case, individual defense counsel responded:

> Here again I think we are getting in to whether the government was required to produce these witnesses at this time and that I do not believe is the issue. As to the specificity what we are saying is were these people here they would be able to provide that specificity. We would not have to rely upon the government's good will to get them here, they would have been here had this case gone forward in the manner in which it should have gone forward, in other words expeditiously as required by the Manual.

5. The statements were from Thomas and Cora. Thomas said:

> A1C Jerry Hoes has given me valium, a prescription medicine, on numerous occasions during the time frame December 1977 through July 1979. I have, had a prescription for the mentioned drug valium but not on these occasions. During the first part of January 1979, A1C Hoes came to a room where I was present, early in the evening. He was acting wild and crazy. In my opinion he was intoxicated although I did not smell alcohol on his breath. He stated that he had been kidnapped by Germans who injected

him with drugs and performed a strange ritual. He went outside in his underclothes and sat in the snow for a long period of time. I also observed a black mark on his forhead [sic] which would be consistent with smoke marks from a candle. On various other occasions I have observed A1C Hoes inject himself with what he stated to be "speed" and liquid valium.

Cora said:

> I have, on numerous occasions, seen A1C Jerry Hoes inject himself with valium and amphetamine, at least this is what he said it was. He has given me valium and dexidrene tablets which he said he got from the pharmacy. He would brag and joke about how easy it was to steal drugs from the pharmacy. I was present one evening last winter when Hoes was acting weird. He said he was hitchhiking and some Germans took him to a house and shot him up and performed a strange ritual with crosses and candles. I saw a black mark on his forehead that a friend told me he put there with a candle. He went out and sat in the snow a long time in his underwear. I saw Hoes make several drug transactions with SSgt Gregg Copeland. These were usually trades of pharmacy drugs by Hoes for speed or other drugs.

drug dealings with an individual who was dealing cocaine.

MJ: Counsel, that is not in this statement. There is nothing about cocaine in this statement.

IDC: No sir, but in the 32 Investigation the person that they are talking about is Copeland who admits that he was dealing cocaine all during this period of time.

MJ: I assume that he will admit that on the stand in this courtroom?

IDC: Yes sir, and that he had materials that he was trading and therefore he could procure cocaine from somewhere other than from the accused. Further that he could procure it at no expense to himself. In addition ...

MJ: Wait a minute. That's not within the four corners of either one of these statements. I assume that Copeland is going to testify?

IDC: He should, yes sir.

MJ: You are alleging that Copeland was a cocaine dealer?

IDC: Yes, sir.

MJ: *And you are alleging that Hoes could have gotten cocaine from Copeland. Is that correct?*

IDC: *Yes sir, that is correct.*

MJ: Is there anyone other than those two individuals that can possibly have direct knowledge of that transaction?

IDC: Yes sir, I believe it is Airman Thomas who has that knowledge.

MJ: Counsel, that is why I asked you to put in writing what you expected Airman Thomas to say. Airman Thomas according to this statement has nothing to do with what you have just said he is going to testify to. Very well. I find that the testimony of the two individuals goes to matters of impeachment and not to matters on the merits. Therefore the appearance of these witnesses is not appropriate or called for under the law. The request for our order to have these two witnesses appear that is Steven N. Cora and Steven F. Thomas, is denied.

(Emphasis added.)

■ Because of the prodding of the military judge, the witness issue was finally identified separately from the motion for speedy trial. Hence, we need not address the question of timeliness of the defense request for the witnesses save to note that while a defense counsel, for tactical reasons, may properly delay a request for witnesses until after the charges are referred to trial, he thereby assumes the risk that, as here, in the interval the witness may become unavailable to testify at trial. *See United States v. Bennett,* 12 M.J. 463, 464 n. 2 (C.M.A.1982).

The rules governing impeachment of witnesses in effect as of the date of trial appear at paragraph 153*b,* Manual, *supra.*[6]

---

**6.** The Military Rules of Evidence, adopted September 1, 1980, retain this principle, though stated somewhat more clearly. Mil.R.Evid. 608 provides:

(a) *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) *Specific instances of conduct.* Specific instances of conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the military judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning character of the witness for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness *as to which character the witness being cross-examined has testified.* The giving of testimony, whether by an accused or by another witness, does not operate as a waiver of the privilege against self-incrimination when examined with respect to matters which relate only to credibility.

(c) *Evidence of bias.* Bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced.

This rule is derived from Fed.R.Evid. 608. *See* 8 M.J. CLXXXVII; Manual for Courts-Martial,

With certain exceptions not apposite here, "it is not permissible, except on cross-examination of a witness who is not the accused, to impeach a witness on the ground that he has committed an offense involving moral turpitude or otherwise affecting his credibility by adducing evidence of the offense not amounting to proof of conviction thereof." However, "[a]n answer denying commission of such an offense may be contradicted by evidence other than the testimony of the witness given at the trial only if the contradicting evidence would be admissible without regard to the answer." Para. 153*b* (2)(b), Manual, *supra.* One commentator has noted:

> In jurisdictions which permit character-impeachment by proof of misconduct for which no conviction has been had, an important curb is the accepted rule that proof is limited to what can be brought out on cross-examination. Thus, if the witness stands his ground and denies the alleged misconduct, the examiner must "take his answer," not that he may not further cross-examine to extract an admission, but in the sense that he may not call other witnesses to prove the discrediting acts.

McCormick's *Handbook on the Law of Evidence* 84 (2d ed. 1972) (footnotes omitted).

The reason for limiting attacks on the credibility of a witness to that information which may be gleaned from cross-examination and not permitting collateral attack by other witnesses is clear: it would confuse the finder of fact with an infinite number of collateral issues not directly bearing on the guilt or innocence of the accused. Thus, if not so limited, a witness testifying on the matter at issue could be attacked by a second witness who could similarly be attacked by a third witness and so forth. As was said by Baron Alderson in *Attorney-General v. Hitchcock,* 1 Exch. 91, 103 (1847):

> The reason why the party is obliged to take the answer of a witness is that if he were permitted to go into it, it is only justice to allow the witness to call other evidence in support of the testimony he

has given, and as those witnesses might be cross-examined as to their conduct, such a course would be productive of endless collateral issues. Suppose for instance witness A is accused of having committed some offence; witness B is called to prove it, when on B's cross-examination he is asked whether he has not made some statement, to prove which witness C is called; so that it would be necessary to try all those issues before one step could be obtained towards the adjudication of the particular case before the court. On the contrary, if the answer be taken as given, if the witness speaks falsely he may be indicted for perjury.

Quoted in 3A Wigmore, *Evidence,* 825 (Chadbourn rev. 1970).

Both at trial and before us the accused contends that our decision in *United States v. Barnes, supra,* establishes a contrary rule. We disagree. There the evidence pertaining to an alleged sale of marijuana by the accused to a Specialist Ware disclosed that Ware was seen entering the accused's automobile and then leaving without giving a prearranged signal to the surveilling parties and placing an object into the trunk of his own car. After this, both the accused and Ware were apprehended, but Ware was not searched and the marked money given for the exchange was never found. However, a subsequent search of Ware's automobile revealed marijuana in the trunk. At trial Ware denied ever using or selling drugs. The defense sought to present testimony from three witnesses concerning specific acts of misconduct related to drug abuse by Ware, but was prevented from doing so by the military judge on the ground that the defense was bound by Ware's denials. The Court of Military Review correctly determined that this was error:

> [T]estimony that Ware, who allegedly purchased the marihuana from the appellant, had himself used and sold drugs was admissible on the merits of the controversy to support defense's contention that Ware had possessed these drugs all along and had tried to sell them to the appellant.

A18 87. *See also* Mil.R.Evid. 404(b).

*United States v. Barnes,* 3 M.J. 855, 857 (A.C.M.R.1977). However, that Court found no prejudice from the error since the judge did allow the witnesses to testify to Ware's reputation regarding drugs. Noting "the distinction between introduction of extrinsic evidence in contradiction of the denial of a non-party witness of other acts of misconduct solely for *impeachment* purposes, and evidence of other acts of misconduct in connection with the *merits* of the controversy," we held that the military judge's ruling erroneously impaired "the substantial right of the accused to perfect and develop his defense to its maximum potential." *United States v. Barnes, supra* at 116, 117; *see also United States v. Lyon,* 15 U.S.C.M.A. 307, 35 C.M.R. 279 (1965).

We have thus recognized an exception to the rule preventing the introduction of collateral evidence solely to attack the credibility of a witness where the evidence goes to the matter at issue and could be introduced independently of the contradiction of the testimony of the witness. *See* para. 153 *b*(2)(b), Manual, *supra;* 3A Wigmore, *Evidence* §§ 1001–3, 1020–1, 979 (Chadbourn rev. 1970).

■ In summary, the rule is that a witness cannot be impeached with acts of misconduct not amounting to a conviction except through cross-examination and the party cross-examining is bound by his answer and is not permitted to introduce extrinsic evidence in contradiction where such evidence goes only to impeaching the credibility of the witness. An exception to this rule (and there are others not applicable here) is where the extrinsic evidence is otherwise admissible and goes to a fact at issue

on the merits.[7] It is the application of the exception which proves difficult for "the circumstances of each separate case determine the admissibility; and no general principle can be laid down." 3A Wigmore, *supra* at 1011.

■ In the instant case the statements of the expected testimony of the witnesses are the sole source of information available for our consideration since nothing else was presented to the military judge for his ruling.[8] Reviewing them, we conclude that the information concerning the prosecution witness Copeland does not contradict the testimony developed during the examination and cross-examination of Copeland.[9] Hence, the witnesses would not be essential as to those offenses to which Copeland testified. *See United States v. Bennett, supra* at 465 n. 4.

■ A different situation pertains to the effect of their expected testimony as to the witness Hoes. On cross-examination Hoes denied injecting himself with "speed" or valium. He admitted fabricating the story of being kidnapped by Germans who injected him with drugs and sitting outside in the cold in his shorts. These events are mentioned in the statements and are matters going to Hoes' credibility. The defense is bound by his answers and may not offer other evidence as it would be collateral to the merits of the case. However, Cora would testify that Hoes bragged about stealing "drugs from the pharmacy" and that he "saw Hoes make several drug transactions with SSgt Gregg Copeland" which "were usually trades of pharmacy drugs by Hoes for speed or other drugs." Hoes denied both stealing from the pharmacy and dealing drugs with Copeland. These state-

7. This is the test established in *Attorney-General v. Hitchcock,* 1 Exch. 91 (1847). It is said to provide "definiteness, concreteness, and ease of application." The *Hitchcock* test is: "Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction?" 3A Wigmore, *Evidence,* 1010 (Chadbourn rev. 1970). *See also Kirkendoll v. Neustrom,* 379 F.2d 694, 697 (10th Cir. 1967); McCormick, *Handbook on the Law of Evidence* 99 (2d ed. 1972).

8. One of the difficulties here is the lack of preciseness of the witnesses' expected testimony. We are required to give a somewhat broader meaning to the language than would otherwise be necessary. Had more details been provided, the always difficult task of applying evidentiary rules would have been made easier.

9. Copeland admitted to extensive dealings with drugs far beyond anything in either of the statements.

ments are pertinent to the defense theory as to specification 5 which alleged a sale of cocaine by the accused to Hoes in that they would tend to show an alternative source of the cocaine which Hoes testified he bought from the accused and delivered to the OSI agents. Thus, they would support the defense denial of the sale and would be relevant to the merits of that offense. On the other hand, they would not be admissible for impeachment of Hoes' testimony that the accused "snorted the cocaine" after making the sale, the offense alleged in specification 6.

Since Cora's statement was erroneously excluded as to specification 5, "the substan-

tial right of the accused to perfect and develop his defense to its maximum potential was impaired."[10] *United States v. Barnes, supra* at 117. Under the circumstances we would remedy this error by dismissing that specification, but the Court of Military Review has taken that action, albeit for a different reason. We do not find that this error infected the other specification to which Hoes testified.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.

---

**10.** My Brothers agree that error was committed but do not believe that the accused was prejudiced by it. However, in view of the action taken by the Court of Military Review, the question of prejudice is academic.