UNITED STATES, Appellee,

v.

Private Benjamin COLON-ANGUEIRA,
U.S. Army, Appellant.

No. 42,410.
CM 440537.

U. S. Court of Military Appeals.

July 5, 1983.

For Appellant: *Captain John Lukjanowicz* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major Robert C. Rhodes* (on brief); *Colonel William G. Eckhardt.*

For Appellee: *Captain John J. Park, Jr.* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Captain Kenneth H. Clevenger* (on brief); *Colonel James Kucera, Major Joseph A. Rehyansky.*

Opinion of the Court

FLETCHER, Judge:

Contrary to his pleas, appellant was found guilty of rape and wrongful appropriation of a motor vehicle, in violation of Articles 120 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 921, respectively. The military judge sitting at this general court-martial sentenced him to a dishonorable discharge and 12 years' confinement at hard labor. The convening authority approved this sentence. The United States Army Court of Military Review affirmed the findings of guilty and the sentence.

The first issue upon which this Court granted review is:

WHETHER THE MILITARY JUDGE ERRED IN DENYING THE APPELLANT'S MOTION TO DISMISS THE CHARGES AND SPECIFICATIONS BECAUSE OF LACK OF SPEEDY TRIAL.

The facts necessary to resolve this issue are substantially uncontested and are summarized below.

The record of trial reveals that appellant was "apprehended and placed in pretrial confinement" on July 11, 1980. On that same day, Captain Robert Guerra, an Army lawyer acting on behalf of appellant, informed trial counsel that a psychiatric evaluation was desired. On July 14, 1980, appellant was "transferred to the Irwin Army Hospital Psychiatric Ward after a suicidal gesture." On July 24, 1980, appellant was "MEDEVACED" to Brooke Army Medical

Center at Fort Sam Houston, Texas. There, his psychiatric evaluation was conducted and completed on September 2, 1980. He was returned to pretrial confinement the next day and remained there until his trial began on October 22, 1980.

■ Defense counsel prior to trial moved for dismissal of the charges against appellant because of denial of his right to a speedy trial. The military judge found that 110 days had elapsed between his initial apprehension and confinement and the date of the speedy trial motion. Nevertheless, he denied the motion because he found that the Government was not accountable for a 51-day period during which appellant was undergoing psychiatric evaluation. He specifically noted that the restraint imposed in the hospital was necessary to prevent further self-destructive behavior on the part of appellant and to facilitate his treatment. We hold that these circumstances and appellant's earlier request for such an examination justify this ruling.

A similar situation was presented in *United States v. Leonard,* 3 M.J. 214 (C.M.A.1977). There, this Court held that for purposes of speedy post-trial review, a reasonable time delay to permit a defense-requested psychiatric examination was not chargeable to the Government. We see no reason why the same rule should not apply for speedy trial purposes. *See United States v. McClain,* 1 M.J. 60, 63 (C.M.A. 1975); *see also* The Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(A). Although some problem may exist when the Government's conduct delays such an examination, no such circumstance exists in the present case. *See United States v. Beach,* 1 M.J. 118 (C.M.A.1975). Therefore, we resolve this issue against appellant.

The second issue upon which review was granted was:

WHETHER THE REFUSAL OF THE MILITARY JUDGE TO ALLOW THE DEFENSE COUNSEL TO QUESTION THE RAPE VICTIM ABOUT HER CONSENSUAL SEXUAL INTERCOURSE WITH MEN OTHER THAN HER HUSBAND SUBSEQUENT TO THE RAPE WAS CONSTITUTIONALLY PERMISSIBLE IN LIGHT OF THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE.

The facts necessary to resolve this question are substantially uncontested and are summarized below.

The alleged victim in this case took the stand and testified for the Government. She stated that appellant pulled a knife on her while she was driving him as a customer in her cab. She asserted that he held this knife in her ribs and directed her to drive down several back country roads and finally told her to park the cab. During this time, she noted that appellant had detached the microphone of her car radio.

The prosecutrix then testified that appellant told her to get out of the cab. She stated that he approached her, grabbed her arm, put the knife back at her ribs, and led her to a small clearing in the bushes. Continuing her testimony, she stated that appellant removed her shirt, cut her bra straps, and pulled her bra down. At that point, she stated appellant ordered her to remove the remainder of her clothes and forced her to the ground. She then stated that appellant had sexual intercourse with her. She asserted that she submitted to appellant because of the threat of the knife, and she believed any resistance would be futile.

The prosecutrix further testified that appellant then pulled his own pants back up and told her to stay there for ten minutes. She stated that appellant left and shortly thereafter she heard a car start up. She then got dressed and ran towards the troop housing area with her bra in her hand. She went to the guard house and told the people there what had happened. Later that night, she saw her taxi parked on base.

Prior to cross-examination of this witness, defense counsel informed the military judge that he intended to question her about her sexual conduct after the alleged offense with men other than her husband. Counsel asserted that it had recently come to his attention that the prosecutrix had

discovered prior to the alleged rape that her husband was unfaithful to her. He also asserted that she consensually engaged in sexual intercourse with two of her fellow cab drivers after the alleged offense. Accordingly, defense counsel argued that her answers to these questions would be probative of her motivation to consent to sexual intercourse with appellant. The military judge permitted defense counsel to question this witness about the state of her marriage at the time of the offense but refused to allow him to question her about her sexual conduct after the offense. The trial of appellant then proceeded. The prosecutrix on cross-examination denied that her husband had ever been unfaithful to her.

Later in the trial the Government called Specialist Four Herman Robinson, Jr., to the stand. He testified that he was Sergeant of the guard on the night in question; that at the motor pool fence he discovered a crying female who seemed emotionally upset; and that she had a bra in her hand and said that she was raped. The cut bra was also admitted into evidence by the Government.

Appellant took the stand in his own defense. He admitted having sexual intercourse with the prosecutrix on the night in question, but asserted that at all times he believed that she was willing and responsive. He admitted that he had a knife at the time of the alleged offense and that he unnecessarily cut her bra straps. He asserted, however, that he did not attack the prosecutrix with it but rather used it to cut

branches as they were moving through the bushes. Furthermore, he testified that, on the day in question, he had hallucinations of seeing spirits and little things like spiders. Finally, he testified that a devil or demon forced him to act in the way he acted.

The defense then called Mrs. Robison to the stand. She stated that she worked with the prosecutrix as a cab driver. She testified that the prosecutrix admitted to her prior to the alleged rape that the latter had discovered her husband had been unfaithful to her and was very upset and angry. The military judge refused to permit Mrs. Robison to testify that the prosecutrix also told her after the alleged rape that on two occasions after the offense she had sexual intercourse with men other than her husband.

---

As a starting point, several observations based on the record of trial must be made concerning the assigned issue.[1] First, defense counsel was not only prevented from questioning the prosecutrix about her post-offense sexual behavior, but he was also prevented from questioning his own witness, Mrs. Robison, about statements the prosecutrix purportedly made admitting this behavior. Second, defense counsel made clear his intention to use the evidence adduced by this questioning to show that the prosecutrix at the time of the offense had a hostile state of mind towards her husband which probably motivated or impelled her to have consensual sex with appellant.[2] *See* Mil.R.Evid. 404(b); J. Wig-

1. The constitutionality of Mil.R.Evid. 412 is not an issue in the present case. This evidentiary rule, as well as its civilian counterpart, Fed.R. Evid. 412, permit admission of "evidence of a victim's past sexual behavior other than reputation or opinion evidence" if it "is constitutionally required to be admitted." Here, defense counsel offered evidence as to specific acts of sexual conduct by the rape victim. Moreover, this evidence was offered to show that the prosecutrix had a motive for consenting to sexual intercourse with appellant. In these circumstances, the pertinent question is whether the military judge, in derogation of Mil.R.Evid. 412(b)(1) and the sixth amendment, impermissibly infringed on appellant's right to present his defense. *See* Lanford and Bocchino, *Rape Victim Shield Laws and The Sixth*

*Amendment,* 128 U.Pa.L.Rev. 544, 556–60 (1980); Weinstein's *Evidence,* para. 412[01] (1982). *See generally* Note, *Constitutional Restraints on the Exclusion of Evidence in the Defendant's Favor: The Implications of Davis v. Alaska,* 73 Mich.L.Rev. 1465, 1487–91 (1975); Westen, *Compulsory Process II,* 74 Mich.L.Rev. 191, 207–31 (1975).

2. In his closing argument on findings, defense counsel asserted that a hostile state of mind of the prosecutrix towards her husband was probative of her credibility. On appeal, counsel argues that such a fact could have undermined the prosecutrix' credibility because it could provide an inference that her complaint and testimony were designed to expose to her husband her consensual sexual activities with oth-

more, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 117 (3d ed. 1940) (hereafter cited as Wigmore). Third, the expected testimony from these witnesses was not offered to show that the prosecutrix had an unchaste character and therefore probably consented to sexual intercourse with appellant. *See* Mil.R.Evid. 404(a); *Doe v. United States,* 666 F.2d 43, 47–48 (4th Cir.1981); *United States v. Kasto,* 584 F.2d 268 (8th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). Fourth, defense counsel did not aver that the expected testimony would show that the prosecutrix has a habit of consenting to sexual intercourse with other men whenever she was angry at her husband for his sexual infidelity. Therefore, he was not averring that the prosecutrix consented to sexual intercourse in accordance with this habit. *See* Mil.R.Evid. 406; Tanford and Bocchino, *Rape Victim Shield Laws and The Sixth Amendment,* 128 U.Pa.L.Rev. 544, 586–87 (1982); *see also United States v. Holman,* 680 F.2d 1340, 1350–51 (11th Cir.1982). Accordingly, it is in this light that we must assess the correctness of the military judge's ruling.

■ The military judge noted that the proposed defense examination of the prosecutrix would extend into areas covered by Mil.R.Evid. 412, and a strict application of that rule dictated that he not allow it. We disagree. As indicated in *United States v. Dorsey,* 16 M.J. 1 (C.M.A.1983), this rule clearly was not intended to be an absolute bar to admission of evidence of the sexual behavior of an alleged rape victim. Instead, the trial judge was required to decide whether such evidence was shown by the defense to be relevant, material and favorable to its case. *Id. See United States v. Elvine,* 16 M.J. 14 (C.M.A.1983). The military judge also made clear on the record that he did not consider evidence of the prosecutrix' post-offense sexual conduct, whether adduced on cross-examination of the prosecu-

trix or on direct examination of Mrs. Robison, to be relevant to any issue before the court. *See* Mil.R.Evid. 401. This ruling we also believe was incorrect.

■ The defense stated that the excluded evidence of the prosecutrix' post-offense sexual conduct was offered to show a motive on her part for consenting to sexual intercourse with appellant. *See* Mil.R.Evid. 404(b). His theory of relevance was based on other evidence to be admitted in the case (*see* Mil.R.Evid. 104(b)), and a series of evidentiary inferences which could be drawn from that evidence and the evidence which was excluded. *See generally Wigmore, supra,* § 399. The complicated nature of his theory of relevance does not *per se* justify its rejection.

Motive has been generally defined as an inward emotion, passion, or feeling that leads a person to do an appropriate act as an outlet for that emotion. *See Wigmore, supra,* § 117. Here the defense asserted that the prosecutrix at the time of the offense was angry at her husband and desired to get even with him for his conduct that excited her hostility towards him. He argued that a reasonable inference could be drawn from the existence of these emotions in the prosecutrix at the time of the offense that she consensually engaged in sex with appellant as an appropriate outlet for these emotions. *Id.* The proffered evidence, he asserted, tended to show the existence of these emotions in the prosecutrix at the time of the offense.

■ The existence of an emotion in a person at a particular time may be circumstantially evidenced by showing events about the person which would tend to excite that emotion or conduct of the person exhibiting that emotion. *Id.* Here, the defense introduced evidence from Mrs. Robison that the prosecutrix stated that she had discovered her husband in a car with another woman a few days prior to the alleged offense. *See Wigmore, supra,* § 389. Mrs. Robison also testified that the prosecutrix

er men. Assuming logic in such an argument, we consider it neither persuasive nor pertinent. *See United States v. Nez,* 661 F.2d 1203 (10th Cir.1981); *United States v. Holy Bear,* 624 F.2d 853 (8th Cir.1980).

appeared at that time to be angry and emotionally upset. *See Wigmore, supra,* § 394. Although the prosecutrix testified that her husband had never been unfaithful to her, Mrs. Robison's testimony was some evidence from which a court could find that she was in fact hostile towards her husband just prior to her alleged rape by appellant.

The above testimony of Mrs. Robison concerned events and conduct of the prosecutrix a few days prior to the alleged offense. In this regard, it evidenced an emotional state in the prosecutrix at a time prior to her averred act of consensual sex with appellant. Accordingly, the defense was further required to show that this testimony also tended to establish her emotional state at the time of the alleged offense. *See Wigmore, supra,* § 395. *Wigmore* generally states:

> Where an emotion of hostility at a specific time is to be shown, the existence in the same person of the same emotion at another time is in general admissible. What that *limit of time* should be must depend largely on the circumstances of each case, and ought always to be left to the discretion of the trial court.

*Wigmore, supra,* § 396 (footnote omitted). The military judge apparently recognized the close temporal proximity between the date of the offense and events and conduct evidencing the prosecutrix' earlier emotional state. His ruling implies that a reasonable inference could be drawn that her earlier emotional state probably continued to exist in the prosecutrix at the time of the alleged offense. This evidence of motive was admitted.

In light of the above, it is now possible to address the defense's claim that the excluded evidence of the prosecutrix' post-offense sexual behavior was also relevant to her motive to consent to sex with appellant. The defense wanted to cross-examine the prosecutrix as to whether she engaged in consensual sexual intercourse with two fellow cab drivers some time between the date of the alleged offense and the trial. He also wanted to question Mrs. Robison as to whether the prosecutrix stated that she engaged in these sexual acts. This evidence was to be admitted to establish the fact that the prosecutrix engaged in consensual sexual acts outside of marriage.

The defense argued that the existence of these facts under the circumstances of this case was also probative of the prosecutrix' state of mind at the time of the offense. In this regard, he noted that her extramarital sexual activity, coupled with her discovery sometime earlier of her husband's infidelity, could be reasonably construed as conduct and events evidencing her anger with her husband and her desire for revenge some time after the offense. *See Wigmore, supra,* § 177. Although the particular time this conduct occurred was not averred, it was alleged that this conduct occurred some time between the alleged offense and the trial, a four-month period. Again, the key question is whether this evidence also had some tendency to show the prosecutrix' state of mind earlier at the time of the offense. *See Wigmore, supra,* § 395.

The military judge stated, "I don't think what she did after the incident, as I think I mentioned yesterday, has any relevancy at all." As a general principle of law, the military judge's ruling was incorrect. Depending upon the circumstances involved in a particular case, subsequent conduct showing a subsequent state of mind may be relevant to show an earlier state of mind at issue. *See Wigmore, supra,* § 399. The particular question to be decided in this context is whether the defense averred circumstances from which the judge could reasonably infer that the subsequent existing emotion was a prolongation of the earlier emotional state in issue, and not an emotion produced since the time in issue. *See Wigmore, supra,* § 395. In other words, were there circumstances linking the two emotional states in association? *Wigmore, supra,* § 396. Here, the defense noted that both emotional states occurred after the prosecutrix' discovery of her husband's infidelity; thus, it was reasonable to infer that the prosecutrix' emotion towards her husband on both occasions was the same. Also, the nature of the prosecutrix' conduct at

the subsequent time, marital infidelity, was similar to the cause of her anger on the earlier occasion. Finally, although the temporal proximity between the two emotional states was not particularly averred,[3] a four-month period does not *per se* mean that the subsequent emotional state was not relevant to the prosecutrix' emotion at the time of the offense. *See Wigmore, supra,* § 398.

In view of the limited nature of the military judge's ruling, defense counsel's arguments, and the evidence which was before the military judge, we hold that the proffered evidence was relevant for the purpose offered.

■ A finding that evidence of a prosecutrix' sexual behavior excluded at trial was relevant does not *per se* mean that this evidence should have been admitted at trial. In accordance with Mil.R.Evid. 412(b)(1) and the decisions of the Supreme Court in *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), and *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the excluded evidence must also have been shown by the defense to be material. *See United States v. Elvine, supra.* As we stated in *United States v. Dorsey, supra* at 6, this determination depends upon "the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of other evidence in the case pertaining to this issue." *See generally* Westen, *Compulsory Process II,* 74 Mich.L.Rev. 191, 225 (1975).

The Government was required to prove beyond a reasonable doubt that appellant committed an act of sexual intercourse by force and without the alleged victim's consent. Article 120. To show force, it introduced evidence that appellant wielded a knife in a threatening manner to accomplish his act of sexual intercourse with the prosecutrix. To show nonconsent, it introduced evidence that the prosecutrix sub-

mitted to appellant without resistance because of her reasonable fear of being killed. *See generally* Comment, *Towards a Consent Standard in the Law of Rape,* 43 U.Chi.L. Rev. 613, 618–20 (Spring 1976).

As indicated earlier, the defense offered the evidence of the prosecutrix' post-offense sexual conduct to show that she had a motive for consenting to sex with appellant. The existence of such an emotion or feeling in the prosecutrix at the time of the offense would have provided some basis for the trier of fact to infer that she consented to sex with appellant. *See Wigmore, supra,* § 117. Such an evidentiary inference might in some cases be sufficient for the trier of fact to find that a reasonable doubt existed as to whether a purported rape victim submitted to her alleged attacker because of her reasonable fear of death or grievous bodily harm. The importance of this issue is reenforced by paragraph 199a, Manual for Courts-Martial, United States, 1969 (Revised edition), which states, *inter alia:* "All the surrounding circumstances are to be considered in determining whether a woman gave her consent or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm."

The military judge ruled that the proffered evidence was not relevant to any issue in appellant's case. As indicated above, we hold that this ruling was legally incorrect. In view of the Government's theory of guilt and the stated purpose for which the defense evidence was offered, there can be no doubt that this evidence was also relevant to an issue of importance in the present case.

The second step to determine materiality concerns the extent to which the prosecutrix' state of mind at the time of the offense was in dispute. More particularly, did the Government affirmatively dispute the fact that the prosecutrix at the time of the offense harbored a deep hostility to-

---

**3.** Defense counsel did not specifically state when the purported statements were made by the prosecutrix to Mrs. Robison or when the acts of sexual behavior took place. He simply averred that these admissions and the acts themselves occurred some time after the alleged rape and prior to trial, approximately a four-month period.

ward her husband and desired revenge against him? Examination of the record of trial reveals that this issue was first raised by the defense in its cross-examination of the prosecutrix. He asked the prosecutrix whether, a few days prior to the alleged offense, she had discovered that her husband was sexually unfaithful to her. The prosecutrix flatly denied that her husband was ever unfaithful to her. Later, defense counsel called Mrs. Robison to testify that the prosecutrix stated prior to the offense that she discovered her husband in a car with another woman and that she appeared visibly angry at him and emotionally upset.

In this context, a conflict existed as to whether the prosecutrix had in fact discovered her husband's infidelity prior to the alleged offense, i.e., the cause of her emotional state. Neither the defense nor the Government questioned the prosecutrix as to whether she made statements to this effect to Mrs. Robison or whether she acted emotionally upset in the latter's presence prior to the alleged offense. However, the Government on cross-examination of Mrs. Robison attempted to minimize her testimony by suggesting that the prosecutrix had "actually said ... that she sometimes wondered about him because he stayed at the office late." Mrs. Robison denied this. Therefore, the question of the prosecutrix' state of mind towards her husband at the time of the offense should have been considered a disputed issue in this case.

Finally, the importance of the excluded evidence in terms of other evidence in the case pertaining to this same issue must be assessed. Again, the purpose of the excluded evidence was to show a motive on the part of the prosecutrix for consensually engaging in an act of sexual intercourse with appellant. The excluded evidence in conjunction with other defense evidence served this purpose by providing a basis for an evidentiary inference as to her state of mind at some unspecified point in time between the date of the alleged offense and the trial. From the probable existence of this subsequent state of mind a further evidentiary inference could be drawn that this same state of mind existed in the prosecutrix at the time of the offense.

As noted earlier, the military judge admitted testimony from the defense witness, Mrs. Robison, that the prosecutrix stated prior to the alleged offense that she had discovered her husband in a car with another woman. He also admitted testimony from this same witness that the prosecutrix appeared angry at her husband and emotionally upset. This testimony provided the basis for an evidentiary inference that the prosecutrix, a few days prior to the offense, had a hostile state of mind towards her husband. A further evidentiary inference could be drawn from the probable existence of this emotion in the prosecutrix that a few days later, at the time of the offense, she had this same emotional state of mind.

The excluded evidence of the prosecutrix' sexual behavior would have added some slight weight and substance to the above defense evidence of motive already admitted in this case. Cf. United States v. Elvine, supra. In this regard, we first note that it would be more probable that the prosecutrix felt hostility toward her husband at the time of the offense if it were shown that this emotional state existed in her both before and after the offense. However, any additional weight that the excluded evidence could have had on this issue could be severely undermined by the failure of defense counsel to particularly aver the temporal proximity between the subsequent emotional state and her emotional state at the time of the offense. Second, we note that it would be more probable that the prosecutrix at the time of the offense not only was hostile to her husband but desired revenge as well if the excluded evidence was admitted. See United States v. Dorsey, supra. Yet, defense counsel did not differentiate between these emotional states in his offer of proof, and an inference of a vengeful state of mind was available on the basis of the admitted evidence alone.

The final issue we must address is whether appellant was prejudiced by the failure of the trial judge to admit the ex-

cluded evidence. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a). Error of a constitutional nature does not require reversal unless an appellate court determines that a reasonable likelihood existed that the excluded evidence could have affected the judgment of the trier of fact. *See United States v. Valenzuela-Bernal, supra* 102 S.Ct. at 3450. The accused is not entitled to a new trial simply because he was denied "evidence possibly useful to the defense but not likely to have changed the verdict." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), quoting from *United States v. Keogh,* 391 F.2d 138, 148 (2d Cir.1968).

Some question might exist as to the necessity of this Court engaging in such an inquiry if we have previously determined that a trial judge incorrectly ruled that evidence of a prosecutrix' sexual conduct was not "constitutionally required to be admitted," in accordance with Mil.R.Evid. 412(b)(1). For example, in the present case we have concluded that the military judge's analysis of the defense's demonstration of the relevance and materiality of the excluded evidence was legally inadequate. Further inquiry on our part might appear superfluous. *See* Westen, *supra* at 215 n. 76.

Nevertheless, we are also aware that Mil. R.Evid. 412(c)(2) provides that a trial judge's decision will normally be made at an out-of-court hearing prior to or during trial. Furthermore, his decision will be based on an offer of proof by the defense and any evidence admitted at this hearing. However, a determination that grave constitutional error occurred as a result of his erroneous ruling depends upon a thorough evaluation of all the evidence at trial. *See United States v. Valenzuela-Bernal, supra* 102 S.Ct. at 3450 n. 10. To the extent that the trial judge was prevented from considering all the evidence of record or that he failed to consider the same, additional inquiry on our part or the Court of Military Review is required before the conviction can be reversed.[4]

We have examined the record of trial in the above light and conclude there was no reasonable likelihood that the excluded evidence could have affected the judgment of the trier of fact. The excluded evidence of the prosecutrix' post-offense sexual conduct was offered to show a motive on her part for consenting to sex with appellant. As indicated earlier, this evidence would have added only slight substance and weight to the defense evidence of motive previously admitted at this court-martial. In this context, it would have provided a somewhat stronger inference that the prosecutrix did not resist appellant because of her reasonable fear of death or grievous bodily harm. On the other hand, the Government's evidence on this material issue was simply overwhelming.

The Government evidenced the following additional circumstances on the question of the cause of the prosecutrix' failure to resist appellant. First, the prosecutrix testified without qualification that she failed to resist appellant because she feared that he would kill her. Second, the prosecutrix testified, and appellant confirmed the fact, that appellant displayed a knife during their encounter. Third, the prosecutrix testified without contradiction by any defense evidence that appellant detached the microphone of her cab radio. Fourth, the prosecutrix testified without qualification that appellant pressed his knife on her ribs while she was driving the cab and ordered her to drive her cab into the back woods. Fifth, the prosecutrix testified without contradiction that she asked appellant not to kill her and he responded that he wasn't going to kill her but he just wanted her. Sixth, she further testified that appellant ordered her from the cab and at knife point physically led her into the woods. Seventh, the prosecutrix testified that appellant removed her shirt and cut her bra straps with his knife. Eighth, the prosecutrix testified that appel-

---

4. Such an inquiry is especially important in cases tried prior to our decisions in *United States v. Dorsey,* 16 M.J. 1 (C.M.A.1983); and *United States v. Elvine,* 16 M.J. 14 (C. M.A.1983), which provide some assistance to the trial judge in interpreting Mil.R.Evid. 412.

lant held a knife at her throat when he ordered her to remove her remaining clothes and panties. Appellant's only response to this testimony concerning his use of the knife was his ambiguous statement that he did not attack her with it. Ninth, the prosecutrix testified that appellant forced her to the ground and had sexual intercourse with her. Appellant on this question testified that he believed from her natural physical responses that she was willing. Tenth, the prosecutrix testified without contradiction that appellant ordered her to remain in the woods and abandoned her there. Finally, the prosecutrix testified without contradiction that she ran from the woods with her bra in her hand and tearfully reported her rape to the base guards. This testimony was confirmed by the testimony of one of the guards.

In the above context, we are convinced that there was no reasonable likelihood that the excluded evidence would have had any impact on the verdict. The Government's evidence that the prosecutrix failed to resist appellant because of her reasonable fear of serious injury or death was detailed, unqualified, and expansive. Appellant's testimony was vague and unresponsive to the Government's proof. He further undermined his own testimony on this issue by stating that he really did not want to hurt her at all at any moment, and by insisting that he was forced to act by evil spirits. In our opinion, appellant was not prejudiced by the trial judge's failure to admit the evidence of the prosecutrix' post-offense sexual conduct. *See United States v. Jefferson,* 13 M.J. 1, 4 (C.M.A.1982).

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring).

In light of the customs that once prevailed, a woman's chastity was viewed by many jurists as relevant to her credibility. On this premise, acts of extramarital inter-course were a proper subject of cross-examination for impeachment purposes. Moreover, promiscuity represented such a departure from accepted morality that evidence of voluntary intercourse on one occasion with one man was admissible to establish that a prosecutrix had probably consented to intercourse on an entirely different occasion with a different man.

In recognition of the sexual revolution in the western world, critics began to question whether a fornicator is any less credible than someone who has adhered to traditional sexual mores, or whether consent to intercourse with A implies any readiness to have sexual relations with B. Reinforced by feminist activity and heightened concerns for privacy, doubts as to the relevance of evidence of extramarital sexual relations by a witness or prosecutrix ripened into judicial decisions excluding such evidence, *cf. United States v. Kasto,* 584 F.2d 268 (8th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979), and into the rape shield provisions of federal, state, and military law.[1]

However, as the principal opinion makes clear, Mil.R.Evid. 412 is primarily a rule of relevance. Thus, just as evidence of an accused's past misdeeds may be admitted when offered for a purpose other than to demonstrate that he is a bad person with a propensity for crime, *see* Mil.R.Evid. 404(b); *cf. United States v. Haimson,* 5 U.S.C.M.A. 208, 17 C.M.R. 208 (1954), evidence of sexual misconduct by a witness or prosecutrix may be received when it has relevance apart from suggesting that a promiscuous person is not credible and is prone to engage indiscriminately in sexual intercourse. For example, evidence of a witness' close sexual relationship with a third person who is hostile to an accused might tend to indicate that the witness also is hostile to the accused; and so this evidence should be admitted. Likewise, evidence that, shortly before an alleged rape, the prosecutrix had

---

1. For a discussion of the rape shield laws, *see, e.g.,* Tanford and Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L. Rev. 544 (1980); Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 Colum.L.Rev. 1 (1977). *See also* Annot., 1 A.L.R. 4th 283 (1980).

sexual intercourse with a third person would be admissible to explain how semen discovered by doctors in examining her soon after the event might have had a source other than the accused. Further, evidence of a victim's reputation or prior conduct—if known to the accused—might negate the specific intent required in sex crimes that contain this element or might demonstrate the accused's honest but mistaken belief that the alleged victim had consented.

As a rule of relevance, Mil.R.Evid. 412 must not be applied mechanically by military judges. Otherwise, a trespass will occur against the sixth-amendment rights of accused to confront prosecution witnesses, cf. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and to offer defense evidence, cf. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

In the case at bar, the defense argument for the relevance of the excluded evidence would have been strengthened if—as in *United States v. Ferguson,* 14 M.J. 840 (A.C.M.R.1982)—it had been coupled with an offer of psychiatric testimony linking more explicitly the infidelity of the prosecutrix' husband to her claimed urge to extract revenge by sleeping with her fellow taxi cab drivers and passengers.[2] However, for the reasons expressed in the principal opinion, I conclude that the evidence offered by appellant slipped across the threshold of admissibility.

Often the mistaken exclusion of defense evidence because of an overly rigid application of Rule 412 will require reversal. *See, e.g., United States v. Dorsey,* 16 M.J. 1

(C.M.A.1983). That outcome, however, is not inevitable; and since—for reasons also explained in the principal opinion—beyond any reasonable doubt appellant was not prejudiced by the error, I join in affirming the findings and sentence.

COOK, Judge (concurring in part and concurring in the result in part):

I have never doubted that a delay for the psychiatric examination of an accused is not chargeable to the Government for speedy trial purposes—regardless of who exercises the responsibility mandated by paragraph 121, Manual for Courts-Martial, United States, 1969 (Revised edition), to initiate the process. *United States v. Beach,* 1 M.J. 118, 119 (C.M.A.1975) (Cook, J., dissenting). Therefore, I agree that appellant's right to a speedy trial was not violated. However, I disagree with the analysis in the remainder of the principal opinion.

If I follow the thread of the majority's logic, it is this: because Mrs. Robison testified that the prosecutrix had mentioned that she discovered her husband in an automobile with another woman, and because Robison testified that the prosecutrix was visibly upset on reporting this, then the judge[1] might have inferred that the prosecutrix' husband had been sexually unfaithful to her, or at least that she may have thought so.[2] If the judge inferred that, he might further have inferred that the prosecutrix decided to get even with her husband. That, in turn, might have led the judge to infer that she would choose to retaliate sexually, *i.e.,* by being unfaithful in return.

And had the judge followed this particular chain of inferences, he might have concluded that, when the prosecutrix allegedly had sexual relations with two of her fellow

---

**2.** A defense counsel must establish clearly at trial the basis for admissibility of evidence which the Government seeks to exclude under Mil.R.Evid. 412. *Cf. United States v. Nez,* 661 F.2d 1203 (10th Cir.1981); *Logan v. Marshall,* 680 F.2d 1121 (6th Cir.1982); *United States v. Holy Bear,* 624 F.2d 853 (8th Cir.1980). Only in this way is the relevance of such evidence made apparent. *Cf.* Mil.R.Evid. 401 and 402.

**1.** The case was tried by military judge alone.

**2.** Other than the simple statement that the prosecutrix had found her husband with the other woman, no evidence was produced or even proffered which suggested infidelity. The prosecutrix, of course, denied discovering that her husband had been unfaithful.

employees at some unspecified time, possibly months after the charged offense, she was at those times still under the influence of that mental state, *i.e.,* the intent to get revenge. Having thus bracketed the encounter with appellant, the judge might have concluded that, at the time of the alleged rape, the prosecutrix was being governed by that same motive. This, in turn, might have made the judge more likely to believe that she was willing to accede to appellant's advances.

By this tortuous process, the majority arrives at the conclusion that admission of evidence that the prosecutrix later had consensual intercourse with her co-workers could theoretically have tended to prove that the intercourse with appellant was also consensual. I consider this utter nonsense, for given sufficient time and imagination, and absent any restrictions on length or probability, I am confident that a sequence of inferences can be fashioned such that virtually any fact, theoretically, could be said to support any other. But the judicial process cannot function with such a theory of relevance. *Cf. Attorney-General v. Hitchcock,* 1 Exch. 91, 103 (1847), cited in *United States v. Cottle,* 14 M.J. 260, 264

(C.M.A.1982). Even assuming that the prosecutrix possessed the speculated motive and engaged in sexual relations with her co-workers, we still know *nothing* about whether she was interested in having sex with appellant. *United States v. Kasto,* 584 F.2d 268 (8th Cir.1978), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). Without some indication that she was bereft of all discretion in the matter, the evidence of her extramarital affairs, if any, is simply irrelevant.[3] Mil.R.Evid. 401–403; *United States v. Dorsey,* 16 M.J. 1, 8 (C.M.A.1983) (Cook, J., dissenting).

I do agree with the majority that the exclusion provisions of Mil.R.Evid. 412[4] cannot be applied mechanically, for undoubtedly there will be cases wherein evidence of a sexual-assault victim's past behavior is relevant and material, such that its admission is constitutionally required. U.S. Const. amend. VI. The instant case is not one of them.

Accordingly, I join in affirming the decision of the United States Army Court of Military Review.

**3.** It is perhaps not impertinent to note that the motive ascribed to the prosecutrix here is quite inconsistent with falsely accusing a lover of rape—particularly where she was neither caught in the act, nor in some other way threatened with exposure or embarrassment. Interestingly, there is no suggestion in the record that she similarly accused her other alleged lovers of rape.

**4.** Mil.R.Evid. 412 provides, in pertinent part:
(a) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, reputation or opinion evidence of the past sexual behavior of an alleged victim of such nonconsensual sexual offense is not admissible.
(b) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexu-

al offense, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—
(1) admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted; or
(2) admitted in accordance with subdivision (c) and is evidence of—
(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or
(B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which the nonconsensual sexual offense is alleged.