**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harry SCHENNAULT, Defendant-
Appellant.**

**No. 17648.**

United States Court of Appeals,
Seventh Circuit.

June 23, 1970.

George F. Callaghan, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Michael B. Cohen, Chicago, Ill., John Peter Lulinski, Asst. U. S. Attys., of counsel, for appellee.

Before SWYGERT, Chief Judge, and MAJOR and HASTINGS,. Senior Circuit Judges.

HASTINGS, Senior Circuit Judge.

A two count indictment charged that on or about February 5, 1969, defendant Harry Schennault, together with John James Rodriguez, unlawfully sold a narcotic drug, heroin, without receiving a written order form issued by the Secre-

tary of the Treasury, in violation of 26 U.S.C.A. § 4705(a),[1] knowing that it had been illegally imported, in violation of 21 U.S.C.A. § 174.[2]

Rodriguez entered a plea of guilty before trial. After a jury trial, defendant was found guilty on both counts and sentenced to concurrent twelve year terms on each and a fine of $20,000.00. He appeals the judgments of conviction and sentence. We affirm.

Hector Jordon, an agent of the Federal Bureau of Narcotics, testified that on January 30, 1969, he made tentative arrangements with Rodriguez to purchase narcotics around February 4. At that time Rodriguez told him that his "connection" was a "big dealer." He referred to him as Harry.

On Febuary 5, 1969, the sale subject of the indictment was negotiated between Jordon and Rodriguez. Jordon agreed to pay $10,000.00 for one-half kilo of heroin. Rodriguez then placed a telephone call and asked for Harry. Over the telephone he said that his man wanted 100 spoons. He then stated, "Okay, I will call you when I have it," and hung up. He asked Jordon to see his money. Jordon produced it but said he would not turn it over until he saw the heroin. Rodriguez protested that the only way he could make the final arrangements was if he had the money in advance to take to his man.

---

1. " § 4705. Order forms
    (a) General requirement.—It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

2. In relevant part, § 174 provides:
    "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being

imported or brought in, knowing the same to have been imported or brought into ·the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * *.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Jordon agreed, and Rodriguez then placed a second telephone call, again asking for Harry. He then said, "Harry, I have got the money. I'm all set. Let me know when you are ready to move. Call [my wife] Chris when you are ready to move and I will meet you."

A short while later, Rodriguez received a telephone call, listened for a few moments and then hung up. He told Jordon to give him the money because he was supposed to meet his man.

Jordon said he had changed his mind and would not pay in advance. Rodriguez said his connection would be angry. Jordon then proposed that they put the money in the trunk of Rodriguez' car to be turned over after the delivery. They did this and then drove to Rodriguez' apartment. Rodriguez told Jordon to wait in the car and walked to the back of the building and a vacant lot next to it. In about a minute, he returned and took Jordon inside. Rodriguez tried to get Jordon to wait there while he went to pick up the narcotics, but Jordon refused. They then drove together to the corner of Merrill and South Chicago Avenues. Rodriguez told Jordon to remain in the car while he went to meet his connection.

Jordon saw him enter the Out Clean Corporation on South Chicago Avenue. About 25 minutes later, three other agents, who had also seen Rodriguez enter Out Clean, saw defendant Harry Schennault drive up to Out Clean and enter through its two glass doors. They then saw Rodriguez come into the vestibule area behind the glass doors and take from Schennault two shiny packages which Schennault was seen to have carried into Out Clean with him.

Rodriguez then returned to the car where Jordon was waiting and handed him two large aluminum foil packages containing heroin. As they went to the trunk for the money, Rodriguez was arrested.

A short time later, defendant Schennault left Out Clean, drove slowly down the street to where Rodriguez' car had been parked and then made a U-turn and proceeded at normal speed in the other direction. He was then arrested.

Defendant was taken to the Federal Bureau of Narcotics office and advised of his constitutional rights. He replied that he understood. After giving a brief personal history, defendant was taken to an adjoining room to make a telephone call. As he entered, he saw Rodriguez and asked what went wrong. Rodriguez replied that he did not know, that Big Manny (Jordon's undercover name) was a good actor and that he never took him for the Man. Schennault told Rodriguez he should have known better and asked whether he had called his wife. Rodriguez said he had not and asked whether Schennault had called his wife.

■ Defendant first contends that the evidence was insufficient to support the guilty verdict. The basis of his argument is that the evidence does not show any sale by him *to Jordon,* as the indictment charges, but shows, at best, a sale by him to Rodriguez. He relies upon United States v. Raysor, 3 Cir., 294 F.2d 563 (1961). Such reliance is misplaced. There the Third Circuit held that the Government could not "salvage its manifestly sloppy indictment," which alleged a sale to an officer, by arguing that the informer who actually bought the narcotics was acting as an agent of the officer. In the instant case, there is no attempt to show an agency reationship between buyers. Rather, the Government has proceeded throughout on the theory that defendant and Rodriguez, as sellers, were joint venturers. The jury was instructed on this basis. The evidence amply supports the conviction on this theory. The mere fact that defendant did not personally deliver the heroin to Jordon is no defense to the instant indictment. United States v. Beltram, 2 Cir., 388 F.2d 449 (1968), cert. den., Colon v. United States, 391 U.S. 955, 88 S.Ct. 1860, 20 L.Ed.2d 869; United States v. Barney, 7 Cir., 371 F.2d 166, 167–168 (1966), cert. den. 387 U.S. 945, 87 S.Ct. 2080, 18 L.Ed.2d 1333 (1967).

■ Defendant next asserts that he was denied a fair trial because the trial court showed bias in favor of the Government. We have examined the record of each instance where the court allegedly displayed bias. We find defendant's contention in this respect to be wholly without merit.

■ Defendant next urges that his Fifth Amendment rights were violated when, after a proper *voir dire* out of the jury's presence, an agent testified that defendant had been informed of his right not to speak before he made the above mentioned statements to Rodriguez. During this testimony the court requested a copy of the statement of rights which had been read to defendant and admitted it as an exhibit which would not go to the jury.

Defendant makes no contention that the statements made to Rodriguez were inadmissible under the Fifth Amendment or that they were anything but voluntarily made. In these circumstances, we cannot say that it was error to inform the jury of the fact that before defendant made the statements, he had been informed that he was under no compulsion to say anything.

A further ground for reversal advanced by defendant concerns testimony of Jordon admitted to impeach testimony of Rodriguez. Rodriguez was a co-defendant under the instant indictment and entered a plea of guilty before trial. He was called as a defense witness and assumed full responsibility for the instant crimes, testifying that defendant Schennault was not a participant. On cross-examination, he testified that he was not afraid of Schennault and that he had not told agent Jordon that he was. On rebuttal, Jordon testified that Rodriguez had told him that he was afraid of Schennault and had to take the blame so that Schennault would not "get me."

■ Defendant urges that this rebuttal testimony was inadmissible under the rule prohibiting impeachment of collateral matters, first raised on cross-examination. We have held that the bias or interest of a witness is not a collateral issue. United States v. Battaglia, 7 Cir., 394 F.2d 304, 314 fn. 7 (1968) and authorities cited therein, vacated and remanded on other grounds, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969).

Defendant further urges that Rodriguez' alleged statements were inadmissible because they were obtained in violation of Rodriguez' rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

■ In *Massiah,* the Court said: "All that we hold is that the defendant's own incriminating statements * * * could not constitutionally be used by the prosecution as evidence against *him* at his trial." 377 U.S. at 207, 84 S.Ct. at 1203. The emphasis is that of the Supreme Court. Thus, assuming the statements of Rodriguez were obtained under circumstances similar to those present in *Massiah,* still the rule of that case is inapplicable here. The statements were not being used as evidence against Rodriguez at his trial.

■ Further, assuming that Rodriguez was not given the proper *Miranda* warnings before making the statements in question, Schennault has no standing to assert the denial of Rodriguez' constitutional rights under these circumstances. United States v. Bruton, 8 Cir., 416 F.2d 310 (1969) and authorities cited therein.

Finally, defendant challenges, in his brief, the constitutionality of the statutes under which he was convicted. After his brief was filed, these issues were decided adversely to him by the Supreme Court, Minor v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969) and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and were abandoned by him on oral argument.

The judgments of conviction and sentence are affirmed.

Affirmed.