UNITED STATES, Appellee,

v.

Barry W. BRENIZER, Engineman
Second Class U.S. Navy,
Appellant.

No. 45889
NMCM 82 4166.

U.S. Court of Military Appeals.

May 20, 1985.

For Appellant: *Lieutenant Commander Cynthia J. Clemens, JAGC, USN* (argued); *Lieutenant Commander Richard K. Delmar, JAGC, USNR,* and *Lieutenant Commander William A. DeCicco, JAGC, USN* (on brief); *Lieutenant Commander Frederick N. Ottie, JAGC, USN.*

For Appellee: *Lieutenant William C. Little, JAGC, USNR* (argued); *Captain W. J. Hughes, JAGC, USN,* and *Lieutenant Steven P. Benson, JAGC, USNR* (on brief).

*Opinion of the Court*

COX, Judge:

A special court-martial convicted appellant, contrary to his pleas, of possession, sale, and transfer of marihuana, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The three specifi-

cations arose out of a single transaction.[1] The issue in this case concerns the military judge's decision to permit the prosecution to introduce a prior conviction against appellant for the purpose of impeaching his trial testimony. 16 M.J. 98. We hold that the judge did not abuse his discretion, under the circumstances of this case, and we affirm.

## I

A Naval Investigative Service (NIS) agent testified that, in conjunction with civilian law enforcement officials and through the use of an undercover informant, a controlled purchase of drugs was effected at appellant's off-base trailer. The law enforcement officers strip-searched the informant beforehand; they maintained continuous observation over him until he was admitted into the trailer; they observed his return from the trailer a few minutes later; and they received a quantity of marihuana from the informant at that time. The officers did not personally see appellant that evening, and they did not have independent knowledge of what went on in the trailer. The informant, not himself of spotless character, testified that he was admitted into the trailer by appellant; that he purchased drugs from appellant; and that he turned over those drugs to the law-enforcement officials. Self-evidently, the prosecution's case depended ultimately on the credibility of the informant.

Appellant testified that he did not sell drugs to the informant on that or any other occasion and that the informant was flatly lying. Several theories were advanced by the defense to account for this asserted falsification. Moreover, it was contended that a number of people had access to appellant's trailer during the period in question, and any of them might have admitted the informant. The informant himself had been a frequent visitor to the trailer and vicinity (a fact confirmed by the informant), and it was suggested that he may have hidden drugs himself in or around the trailer. It was conjectured that, on the night in question, he merely retrieved his own stash and turned it over to the authorities. Hence, the defense case depended heavily on the credibility of appellant.

During cross-examination of appellant, trial counsel requested and was granted a hearing out of the presence of the members. There, he announced his intention to extract appellant's admission that he had been convicted of unauthorized absence by a special court-martial 4 years earlier.[2] The stated purpose was to impeach appellant's trial testimony. Citing Mil.R.Evid. 609(a), defense counsel objected on the grounds that the probative value of the prior conviction did not outweigh its prejudicial effect. The conviction was for a 106-day unauthorized absence,[3] and it had occurred during appellant's prior enlistment. He was serving in his second enlistment at the time the instant charge arose. The military judge overruled the defense objection, without delineating his balancing process, and he permitted trial counsel to cross-examine appellant about the conviction.

Trial counsel simply asked appellant whether he had been convicted by a special court-martial in October 1977 for an unauthorized absence of approximately 3 months. Appellant acknowledged that he had. The matter was not again referred to during the testimony or argument on findings. The military judge gave the following limiting instruction on findings:

> Now, gentlemen, the evidence has been introduced to show that the accused was convicted of an unauthorized ab-

---

1. The military judge treated them as one offense for sentencing purposes.

2. Trial counsel was in possession of proof of the conviction, and it was admitted on sentencing.

3. For the unauthorized absence, appellant was sentenced to reduction to pay grade E–2, forfei-

ture of $200.00 pay per month for 2 months, hard labor without confinement for 30 days, restriction for 30 days, and confinement at hard labor for 1 month. The convening authority suspended the restriction and the hard labor without confinement.

sence offense by a military court. Evidence of this conviction may be considered only for the limited purpose of its tendency, if any, to impeach the credibility of the accused, Petty Officer Brenizer, as a witness, that is, for its bearing, if any, on his worthiness of belief. I wish to emphasize that such evidence may be considered for no other purpose whatsoever. You may not infer from such evidence that the accused has an evil disposition or criminal propensity and that he, therefore, committed the offenses alleged.

## II

Mil.R.Evid. 609 is "taken" from Fed.R.Evid. 609(a), with modifications insignificant here. *See* Drafters Analysis, Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition). The rule provides:

(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death, dishonorable discharge, or imprisonment in excess of one year under the law under which the witness was convicted, *and the military judge determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused,* or (2) involved dishonesty or false statement, regardless of the punishment. In determining whether a crime tried by court-martial was punishable by death, dishonorable discharge, or imprisonment in excess of one year, the maximum punishment prescribed by the President under Article 56 at the time of the conviction applies without regard to whether the case was tried by general, special, or summary court-martial.

(b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date ...

(Emphasis added.)

■ Several points about the prior conviction can be resolved at the outset. First, it was timely within the overall guidelines of Mil.R.Evid. 609(b). Also, although the charge was referred to a court-martial not empowered to impose a dishonorable discharge, the offense was "punishable" by a dishonorable discharge under the Table of Maximum Punishments, para. 127c, Manual, supra. Hence, it qualified for potential admissibility under Mil.R.Evid. 609(a)(1). Further, as unauthorized absence does not ordinarily involve dishonesty or false statement, the conviction was not admissible under Mil.R.Evid. 609(a)(2). *See* Drafters Analysis, *supra.* That leaves for consideration the balancing test of Mil.R.Evid. 609(a)(1).

■ We have not previously had occasion to consider this aspect of Mil.R.Evid. 609(a)(1), but the Federal courts have frequently done so in connection with their rule. *See generally* 3 J. Weinstein & M. Berger, *Evidence,* para. 609[04] (1982). Among the factors considered relevant to the balancing are:

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue.

*United States v. Hawley,* 554 F.2d 50, 53 n.5 (2d Cir. 1977); *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). *See Gordon v. United States,* 383 F.2d 936, 940–41 (D.C.Cir. 1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). The list is not claimed to be exhaustive and other perti-

nent factors may in the future be identified.

■ Applying these factors to the instant case, we note that we have, in the past, considered the impeachment value of an unauthorized absence conviction to be quite low. *United States v. Johnson*, 1 M.J. 152, 154 (C.M.A. 1975); *United States v. Weaver*, 1 M.J. 111, 118 n. 6 (C.M.A. 1975); *United States v. Nicholson*, 8 U.S. C.M.A. 499, 502–03, 25 C.M.R. 3, 6–7 (1957). However, this is not to say it is nonexistent. We recognize that unauthorized absences often reflect irresponsibility and a disregard for duty and authority on the part of the absentee. It is not illogical, therefore, for factfinders to infer that a servicemember who thinks so little of his service commitment as to depart without authority may also take lightly his obligation to testify truthfully, especially when his own neck is on the block. Therefore, it was not plain error for the military judge to admit evidence of such a conviction.

As noted, the prior conviction fell comfortably within the standard 10-year limitation of Mil.R.Evid. 609(b). However, the witness' post-conviction history is also relevant in this regard. Here, it can only be presumed appellant performed admirably during that interim because, after the initial conviction, the Navy not only accepted him for reenlistment, but also promoted him three grades.[4] This factor, then, weighs against permitting the impeachment in this case.

Unauthorized absence bears no facial similarity to possession, sale, and transfer of drugs. Where there is a strong resemblance between the offenses, the danger is that the court members may reason that "if he did it before he probably did so this time." *Gordon v. United States, supra* at 940. No such risk was present here.

Appellant's testimony was of critical importance to the defense theory. This factor militates against permitting impeachment if it is thought likely to deprive the factfinder of important testimony, *i.e.*, by preventing an accused's testimony. However, unauthorized absence would ordinarily seem to have a low potential for misuse by court members, as opposed to more heinous offenses. Therefore, it is unlikely to be the true cause of an accused's refusal to testify. Of course here the point is moot, since appellant testified.

Finally, the case essentially came down to appellant's credibility versus that of the informant. In such circumstances, it is

---

4. There remains one additional part of Mil.R. Evid. 609 that warrants comment. Mil.R.Evid. 609(c), *"Effect of pardon, annulment, or certificate of rehabilitation,"* provides:

Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, *or other equivalent procedure based on a finding of the rehabilitation of the person convicted,* and that person has not been convicted of a subsequent crime which was punishable by death, dishonorable discharge, or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence. (Emphasis added.)

The drafters analysis of the rule suggests "that successful completion of" one of "the various Armed Forces post-conviction programs, such as the Air Force's 3320th Correction and Rehabilitation Squadron and the Army's Retraining Brigade," is probably " 'an equivalent procedure based on the finding of the rehabilitation of the persons [sic] convicted' within the meaning of the Rule." Drafters Analysis, Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition). However, there is no evidence here that appellant completed such a program.

Further, it seems clear that the mere fact of reenlistment, when the service has knowledge of a member's prior court-martial conviction, does not constitute a formal "pardon, annulment, [or] certificate of rehabilitation" within the meaning of Mil.R.Evid. 609(c). Likewise, without more information than this record discloses, we cannot conclude that reenlistment, in-and-of-itself, is a procedure "equivalent" to pardon, annulment, etc. Nonetheless, the fact of reenlistment, in the face of a prior court-martial conviction, would appear to indicate the service's judgment that a servicemember had, in fact, been rehabilitated. Coupled with evidence of such other processing as may have been involved in the decision to reenlist such servicemembers, it may well be possible for an accused to establish that his conviction was the subject of a procedure "equivalent" to pardon, etc., within the meaning of the rule. However, no such contention or record was made in this case.

preferable that as much information as possible be provided the court to aid it in its decision. *United States v. Ortiz*, 553 F.2d 782 (2d Cir.), *cert. denied*, 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977); *Gordon v. United States, supra* at 941; *United States v. Weaver, supra* at 118 n.10. This factor tends to support receipt of the evidence.

This balancing process is obviously not amenable to precise mathematical application. Broad discretion is vested in trial judges, and appellate courts should not disturb their decisions "absent a clear showing of abuse" of discretion. *United States v. Ortiz, supra* at 784; *United States v.*

*Perry*, 12 M.J. 920 (N.M.C.M.R.), *pet. denied*, 13 M.J. 245 (1982).

As for this case, we personally view the prior conviction as having only slight impeachment value. On the other hand, the potential for misuse of the evidence appears to be negligible, particularly in light of the instructions given. Under such circumstances, we have no occasion to upset the trial judge's ruling.

Accordingly, the decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.