UNITED STATES, Appellee,

v.

Milton J. HURTT, III, Sergeant, U.S. Marine Corps, Appellant.

No. 49165.
NMCM No. 82–4297.

U.S. Court of Military Appeals.

May 5, 1986.

For Appellant: *Captain David C. Larson, JAGC, USN* (on brief).

For Appellee: *Captain W.J. Hughes, JAGC, USN* and *Major J.S. Uberman, USMC* (on brief).

Opinion of the Court

COX, Judge:

A general court-martial convicted appellant, contrary to his pleas, of violating naval regulations by possessing, transferring, and selling approximately one pound of marihuana, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892.[1] Three issues were granted review.[2] We hold that the military judge erred to appellant's prejudice in refusing to admit evidence of appellant's good military character during findings, and we reverse.

The Government's evidence suggested that a Marine informant for the Naval Investigative Service (NIS) made an arrangement with Sergeant R. Dubose, another Marine, to purchase a pound of marihuana.

---

1. Appellant's sentence extends to a dishonorable discharge, confinement for 18 months, total forfeitures, and reduction to the lowest enlisted grade.

2. We granted review of the following issues:

I
WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INQUIRE INTO THE EXISTENCE OF A CONFLICT OF INTEREST BASED ON CIVILIAN COUNSEL'S REPRESENTATION OF BOTH APPELLANT AND A CO–ACCUSED.

II
WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED BY FAILING TO RETURN THIS CASE FOR A DUBAY HEARING TO DETERMINE THE EXISTENCE OF A CONFLICT OF INTEREST.

III
WHETHER THE MILITARY JUDGE ERRED BY REFUSING TO ADMIT EVIDENCE OF APPELLANT'S GOOD MILITARY CHARACTER.

Dubose had been suspected of trafficking in drugs by NIS authorities. Unfortunately for the agents, the planned surveillance broke down, with the result that the informant and Dubose drove unobserved to appellant's house off-base. Because the agents had not previously suspected appellant of drug involvement, no surveillance had been set up at his quarters. At the house, according to the informant, the money that had been paid to Dubose was transferred to appellant. Appellant then produced the marihuana and gave it to Dubose who, in turn, gave it to the informant. Later, the informant turned a pound of marihuana over to NIS authorities at a prearranged location.

Upon being charged with the transaction, appellant retained the services of a civilian attorney—a retired Marine Corps lawyer. Some months later, appellant introduced Dubose to his attorney for the purpose of representing Dubose. Dubose had not yet been charged with the incident at appellant's home but was charged with unrelated offenses. The attorney immediately recognized Dubose's name from appellant's case and assumed that Dubose would eventually be charged with that offense as well. Therefore, according to an affidavit filed with the Court of Military Review, the attorney discussed the potential for conflict of interest with the two Marines. Notwithstanding the potential for conflict, both service members purportedly expressed their desire to be represented by the attorney. Subsequently, Dubose was indeed charged for the alleged incident at appellant's house.

The two Marines were tried separately, and the attorney represented them both.[3] At appellant's trial, no issue was raised by either party as to defense counsel's potential conflict of interest. The fact that defense counsel was representing both Dubose and appellant was brought to the military judge's attention, albeit in connection with an unrelated motion.[4] The judge evidently did not note the conflict issue and made no inquiries in that direction.

In appellant's trial (and apparently in Dubose's trial as well), the defense took the approach that the informant was lying. While admitting that a meeting had occurred at appellant's house during which Dubose, in Griep's presence, gave appellant money, the defense contended that the transaction was in connection with a legitimate, independent business matter and was not related to drugs. The defense posited that no drugs whatever were present in appellant's house.

Defense counsel, while not accusing Dubose of wrongdoing, argued that appellant was not a party to any drug transaction, regardless of what may or may not have transpired between Dubose and Griep. Appellant testified in his own behalf and denied involvement; Dubose was not called as a witness at appellant's trial. The reason given by defense counsel for not calling Dubose as a witness was a concern that the Government would impeach Dubose. Despite defense efforts, appellant was convicted.

Dubose, on the other hand, was acquitted of the charge in his trial. Apparently, neither appellant nor Dubose testified at Dubose's trial. Trial defense counsel, in his affidavit, attributes the different results to the availability in Dubose's trial of certain evidence impeaching Griep which had not been available to appellant.

On appeal, appellant contends, in effect, that his defense counsel was operating with one hand tied behind his back. Appellant suggests that, but for trial defense counsel's interest in protecting Dubose, defense counsel could have attacked Dubose and painted him as a bad person and the

---

3. Appellant was also represented by a military attorney who did not also represent Dubose.

4. It was trial counsel who brought the matter of dual representation to the military judge's attention. Ironically, it was not a *conflict* of interest between appellant and Dubose that concerned the Government, but a *concert* of interest. Specifically, trial counsel sought to preclude certain information coming into the defense's hands, as a result of appellant's trial, from being used by counsel in his representation of Dubose.

likely source of the drugs. In particular, appellant suggests that Dubose should have been called as a defense witness (presumably to deny that the transaction had occurred) and then impeached by the very evidence defense counsel sought to preclude.

Appellant raised the same issue at the Court of Military Review. In an affidavit submitted to that court, appellant averred that trial defense counsel never mentioned that the dual representation might result in any conflict of interest. Defense counsel, in his affidavit, states to the contrary that he discussed the potential for conflict at some length with the two servicemembers and they both consented to the representation. The record indicated to the Court of Military Review "a professional, vigorous and energetic defense presentation that meets even the most stringent tests of counsel competency." Based on the record and the affidavits, the Court of Military Review concluded that there was no conflict of interest in the representation, and "the issue of credibility" was decided in defense counsel's "favor." Unpublished opinion at 4.

 Under the sixth amendment, an accused has a right to the "untrammeled and unimpaired" assistance of counsel. *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942); *see also Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). The dual representation of two or more accused by a single attorney, however, "is not *per se* violative of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). Indeed, it may be in co-accuseds' interest to present a united front to the prosecution. *Glasser v. United States, supra* 315 U.S. at 92, 62 S.Ct. at 475 (Frankfurter, J., dissenting). But when a trial judge "knows or reasonably should know that a particular conflict exists," he has an "affirmative duty to inquire into the propriety of multiple representation." *Cuyler v. Sullivan*, 446 U.S.

335, 347, 348, 100 S.Ct. 1708, 1717, 1718, 64 L.Ed.2d 333 (1980).

In *United States v. Breese*, 11 M.J. 17, 23 (C.M.A.1981), we established the rebuttable presumption "that the activity of defense counsel exhibits a conflict of interest in any case of multiple representation wherein the military judge had not conducted a suitable inquiry into a possible conflict." Our intent was "to disarm future contentions that, by reason of multiple representation, an accused has been deprived of 'the effective assistance of counsel." *Id.; see also United States v. Devitt*, 20 M.J. 240 (C.M.A.1985). Lacking the benefit of such judicial inquiry here, the question is whether the presumption of prejudice was rebutted in the record of trial and the affidavit.

Though we can appreciate the utility of the trial strategy used by defense counsel, the "mere" astuteness of particular defense tactics does not demonstrate a lack of conflict of interest. Indeed, it amounts to a matter of considerable speculation to determine, after-the-fact, whether such a conflict existed, "[s]ince a possible conflict inheres in almost every instance of multiple representation." *Cuyler v. Sullivan*, 446 U.S. at 348, 100 S.Ct. at 1718. Moreover, we do not know the content of defense counsel's purported advice and cannot gauge appellant's understanding of it. Thus, it is difficult for us to know whether appellant's waiver was an intelligent one. However, our resolution of Issue III makes it unnecessary to decide whether the Court of Military Review's actions were effective in rebutting the presumption of prejudice. We merely note that, had the *Cuyler v. Sullivan, supra*, duty been observed, this troublesome issue never would have arisen.[5]

 During its case-in-chief, the defense sought to introduce character witnesses to testify as to appellant's "good military character" and his law-abiding nature. Upon trial counsel's objection, the military judge excluded this testimony. In the

---

5. Counsels' responsibility to assist the judge in this regard is obvious.

judge's view, only evidence going to appellant's truth and veracity was pertinent under Mil.R.Evid. 404(a)(1); such testimony was permitted.

Subsequent to the date of this trial, beginning with *United States v. Clemons,* 16 M.J. 44 (C.M.A.1983), and *United States v. Piatt,* 17 M.J. 442 (C.M.A.1984), and culminating in *United States v. Weeks,* 20 M.J. 22 (C.M.A.1985), and *United States v. Vandelinder,* 20 M.J. 41 (C.M.A.1985), we decided a series of cases in which we reached the opposite conclusion. Based upon the factors identified in *Weeks* for determining whether an accused was prejudiced by a trial judge's erroneous refusal to admit character evidence, 20 M.J. at 25, we conclude that the findings and sentence must be set aside. First, the Government's case was not particularly strong, depending as it did almost exclusively on the uncorroborated testimony of an informant. Also we note that Dubose was acquitted, apparently on much the same evidence. Second, given the indications of the informant's history, it cannot be said that "the defense's theory of the case" was "feeble or implausible." Third, inasmuch as the case essentially boiled down to a swearing contest between appellant and the informant, evidence of appellant's character would seem to be particularly significant. Finally, it appears that the evidence excluded from findings was substantial.

The decision of the United States Navy-Marine Corps Court of Military Review is reversed; the findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge EVERETT concurs.