UNITED STATES, Appellee,

v.

Sergeant William H. COLLIER, Junior,
183–44–7706, United States
Army, Appellant.

ACMR 8800417.

U.S. Army Court of Military Review.

28 Dec. 1988.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Jon W. Stentz, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before, HOLDAWAY, THORNOCK and CARMICHAEL, Appellate Military Judges.

## OPINION OF THE COURT

THORNOCK, Senior Judge:

Contrary to his pleas, appellant was convicted by a special court-martial composed of officer and enlisted members of failure to repair, disobeying the lawful order of a warrant officer, and dereliction of duty in violation of Articles 86, 91 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891 and 892, (1982) [hereinafter UCMJ], respectively.[1] He was sentenced to a bad-conduct discharge and reduction to Private E-1. The convening authority approved the sentence.

Before this court, the appellant asserts two errors: (1) that the military judge erred by improperly admitting appellant's prior court-martial conviction on the merits

and (2) that the military judge erred by failing to instruct *sua sponte* on the affirmative defense of divestiture of office by the warrant officer who issued an order to the accused to be "at ease."

I

A

■ The first assignment of error focuses on at least competing, if not conflicting, Military Rules of Evidence [hereinafter Rule(s)]: relevance as governed by Rules 401 to 404 and evidence of character and impeachment as governed by Rules 608 and 609. Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 401–404, and 608, 609.

An Article 39(a), UCMJ, hearing was held several days before presentation of evidence. *Inter alia*, a defense motion in limine for suppression of appellant's prior court-martial conviction was discussed. Government counsel put defense counsel on notice that he intended to use the prior conviction on the merits if the defense "opened the door." The prior conviction included disobedience offenses very similar to the offenses charged herein.

During the course of the trial, the appellant took the stand as a witness. Not surprisingly, his version of the evidence was diametrically opposed to the government's case; in sum, that the allegations against him were not true. The appellant testified that he had not been given the order to be at ease. Significantly, when asked by the defense counsel what he would have done had he received such an order, appellant replied, "I would have at eased [sic], Sir."

In rebuttal, the government offered the prior conviction. During the Article 39(a) hearing on the admissibility question, the military judge discussed with counsel in some detail the limitations of Rules 404(a)(1) and 404(b) concerning the relevance and use of the information vis-a-vis

---

1. Appellant was acquitted of one specification of disobeying a noncommissioned officer's lawful order.

the requirement of Rule 403 that evidence, even if relevant, can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. The military judge thereafter admitted only a portion of the record of the prior conviction, namely, two specifications of willful disobedience. When it was admitted, the military judge also gave an appropriate limiting instruction to the members concerning the use of the evidence.

■ In our view, the military judge properly weighed the evidence and met the standards and limitations of Rules 401 through 404. Moreover, since military offenses were involved, the accused's "military character" was at issue. A soldier's capacity for and history of obedience to orders is a pertinent character trait in offenses involving military discipline. The admission met these criteria as well. *See United States v. Court,* 24 M.J. 11 (C.M.A. 1987); *United States v. Elliott,* 23 M.J. 1 (C.M.A.1986); *United States v. Hurtt,* 22 M.J. 134 (C.M.A.1986); and *United States v. McNeill,* 17 M.J. 451 (C.M.A.1984).

### B

■ Having decided upon the propriety of the military judge's ruling on relevance, we must now consider Rule 609 concerning impeachment by evidence of conviction of a crime.

At trial, the appellant was on ample notice of the spectre of the prior conviction. In answer to the motion in limine, the trial counsel argued the rationale of Rule 609(a) for use of the prior conviction on the merits if the defense "opened the door." The defense placed both veracity and character at issue by directly contradicting the government's evidence as to the giving of the order. Appellant stated he would have obeyed if the order had been given, and on cross-examination, appellant testified that government witnesses were not truthful. These facts opened the door. Moreover, in the following colloquy the defense as much as conceded that the door was open:

DC: Sir, it is the defense's position that this case is one which will be decided upon believability of testimony, that

we've got two distinctly [sic] points of view here.

MJ: Well, that was the case that was going to the court until you decided to put your client's character for being obedient to orders into the balance. The prosecution witnesses have said, "Yes, I gave him that order," and your client had said, "No, he didn't give me that order." Then you went the next step, "If he had given you that order, what would you have done?" "Oh, I surely would have obeyed him," or "I wouldn't have thought of disobeying him." Now, those weren't the words, but that was the message. Some of them were the words, I think.... You know, that's really the thing that gives me the biggest problem....

DC: Yes, sir. All I can say in response to this is, I was trying to be very careful not to get this matter to be in issue [sic].

MJ: Well then why did you go to the trouble of putting his character as a law-abiding citizen into issue? Or as, you know, an order obeying soldier, rather than a law-abiding citizen. You know, that's a rhetorical question.

DC: It was—it was inadvertent, sir.

MJ: Well, it's there, you know, I can't unring the bell I don't think.

Since the appellant was the witness who placed these matters before the court, the possibility of his impeachment by evidence of a prior conviction was available to the government. As to the questions of veracity, character and impeachment, we hold that there was a proper basis for the admission of the prior conviction before findings. We note again the care taken by the military judge to limit the evidence on the merits to only two disobedience specifications and his lengthy limiting instruction given to members concerning its use.

### C

Admissibility of evidence depends in large part on the purpose for which such evidence is offered. *United States v. Owens,* 21 M.J. 117 at 122 (C.M.A.1985) (citing *United States v. Martin,* 20 M.J. 227, 229 n. 3 (C.M.A.1985)), *cert. denied,*

479 U.S. 917, 107 S.Ct. 323, 93 L.Ed.2d 295 (1986); *United States v. Brannan,* 18 M.J. 181, 183 (C.M.A.1984).

 Evidence which may be inadmissible for one purpose may be admitted for another properly articulated reason. Rule 105. The proffered evidence met the balancing test required of admissibility under Rule 609(a)(1). In *United States v. Brenizer,* 20 M.J. 78, 80 (C.M.A.1985), Judge Cox enumerated five significant, but not all-inclusive balancing factors to be considered: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. The defense case placed the fourth and fifth factors squarely before the military judge. The conviction admitted was for exactly the same type of offense, so the third criterion is also satisfied. As to the second factor, because the prior conviction was some seven and one-half years prior to the trial, the defense argued that it was stale. However, Rule 609(b) permits use of convictions up to ten years in age. If the conviction is more than ten years old, a more stringent requirement is added.[2] The drafters of the Rules obviously considered the remoteness question and propounded rules to follow in military trials. The present conviction falls within those military rules.

We then are left with the impeachment value of the prior conviction. The appellant's testimony was not only critical to the defense theory, it was nearly the entire defense case. Given the facts of this case, the impeachment value was important. Thus, the balancing factors were met. In *Brenizer,* 20 M.J. at 81, the Court of Military Appeals also cautioned that when an accused's credibility is on trial, it is prefer-

able that as much information as possible be provided the court to aid it in its decision. That guidance too was properly followed in this case.

There was thus an admission of a prior conviction that was proper under either of two theories, Rules 401 through 404 or Rule 609. The military judge properly complied with the balancing requirements of the foregoing rules. We therefore find the appellant's first assignment of error to be without merit.

## II

### A

The concept of divestiture or abandonment of office is a recognized affirmative defense. *United States v. Struckman,* 43 C.M.R. 333 (C.M.A.1971) (superior challenging a subordinate to a fight); *United States v. Johnson,* 43 C.M.R. 604 (A.C.M.R. 1970). Unacceptable conduct toward a subordinate may give rise to the defense. *See United States v. Richardson,* 7 M.J. 320 (C.M.A.1979) (using offensive epithet); *Struckman,* 43 C.M.R. at 334. Clearly there is a *sua sponte* requirement to instruct on affirmative defenses reasonably raised by the evidence. *United States v. Taylor,* 26 M.J. 127 (C.M.A.1988).

### B

 In the instant case, there was a heated, somewhat profane exchange, between a warrant officer and his subordinate, the appellant. Chief Warrant Officer Three (CW3) "P." testified, that because the exchange was loud and somewhat heated, he gave the appellant an order to be at ease. The order was given in an attempt to keep the exchange from getting out of hand. According to CW3 "P.", the appellant continued the exchange in

---

**2.** Mil.R.Evid. 609(b).

*Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by

specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

spite of a repeated order to be at ease. CW3 "P." said he did not call the appellant an offensive term. The appellant's version was that he was called an offensive term and that he was not given an order to be at ease.

We must consider whether CW3 "P." abandoned his office. The language used certainly was not the "parlor or drawing room" language heard in polite society. However, it was typical of the language used daily in line units, motor pools and the like by soldiers and their superiors. For abandonment of office or divestiture to be a viable issue, the superior must affirmatively abandon the office by taking action or using language that is outside the accepted norm of everyday activities or language. *Stuckman*, 43 C.M.R. at 334. The abandonment must also be a clear one, such as a challenge to a fight or use of racially sensitive language. Such was not the case here. The language used by CW3 "P." was not so shocking, out of the ordinary or inappropriately challenging as to divest him of his status as a superior warrant officer whose orders were to be obeyed by the appellant. We conclude from the record that inappropriate language was not directed at the appellant and that he was not called an offensive term by CW3 "P.".

### C

The military judge has a responsibility to properly instruct the members. Counsel, likewise, share those responsibilities. *See United States v. Kauble*, 15 M.J. 591, 592 (A.C.M.R. 1983), *rev'd in part and aff'd in part*, 22 M.J. 179 (C.M.A. 1986).

▇▇▇▇ The military judge commented to counsel that he saw no lesser included offense or affirmative defense that needed to be instructed upon. Both counsel however, proposed needed instructions to the judge. The government suggested a lesser included offense and, significantly, the defense requested an instruction only on mistake of fact for the failure to repair offense. No divestiture or any other affirmative defense instruction was sought by counsel or seen as an issue by the military judge. The military judge thereafter gave full,

complete, and proper instructions. These instructions were obviously heeded by the members as seen by their findings by exception and substitution on Charge I. The military judge's duty to *sua sponte* instruct on an issue exists only when the issue is fairly raised by the evidence. The Court of Military Appeals' test is that there must be some evidence from which a reasonable inference can be drawn before an affirmative defense is at issue. *United States v. Ginn*, 4 C.M.R. 45 (C.M.A. 1952). Recently, the military high court held that the *sua sponte* requirement to instruct on lesser included offenses was parallel to the requirement for instruction on affirmative defenses. The duty to instruct was explained as follows:

> It is not necessary that the evidence which raises an issue be compelling or convincing beyond a reasonable doubt. Instead, the instructional duty arises whenever "some evidence" is presented to which the fact finders might "attach credit if" they so desire.

*Taylor*, 26 M.J. at 129 (citing *United States v. Jackson*, 12 M.J. 163, 166–67 (C.M.A. 1981)). *See also United States v. Heims*, 12 C.M.R. 174 (C.M.A. 1953). Like our high court, on the facts of this case, we do not find that the issue of the affirmative defense of divestiture was fairly raised by the evidence. We, like they, find that "there is no basis to assume that the defense counsel [and the military judge] simply overlooked the availability of this defense. Instead [they] recognized that [divestiture] was not reasonably raised by the evidence at trial." *Taylor*, 26 M.J. at 131.

Accordingly, we find no merit in the second assigned error.

The findings of guilty and the sentence are correct in law and fact and are affirmed.

Chief Judge HOLDAWAY and Judge CARMICHAEL concur.