UNITED STATES, Appellee,

v.

Morris T. COBIA, Staff Sergeant,
U.S. Army, Appellant.

No. 99–0073.
Crim.App. No. 9601645.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 8, 1999.

Decided Aug. 24, 2000.

For Appellant: *Colonel Adele H. Odegard* (argued); *Colonel John T. Phelps II* (on brief); *Major Scott R. Morris.*

For Appellee: *Lieutenant Colonel Eugene R. Milhizer* (argued); *Colonel Russell S. Estey,* and *Major Patricia A. Ham* (on brief); *Captain Troy A. Smith.*

Chief Judge CRAWFORD announced the judgment of the Court and delivered an opinion in which Senior Judge COX joined.

Contrary to his pleas, appellant was convicted by a military judge of two specifications of rape, two specifications of forceful sodomy with a child, indecent acts with a child, and adultery, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925, and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, 20 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals found the evidence to be insufficient to convict appellant of either specification of forceful sodomy, but approved both of the lesser included offenses of attempted sodomy. It then reassessed and affirmed the findings and sentence. We granted review of the following issues:

I. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION AND COMMITTED PLAIN ERROR WHEN HE REFUSED TO GRANT DEFENSE COUNSEL'S MOTION TO PROHIBIT USE OF APPELLANT'S CIVILIAN CONVICTION FOR AN IDENTICAL OFFENSE, WHICH FORMED THE BASIS FOR TWO OF THE SIX SPECIFICATIONS AT THE COURT-MARTIAL.

II. WHETHER THE EVIDENCE ADDUCED AT TRIAL IS LEGALLY SUFFICIENT TO SUPPORT FINDINGS OF GUILTY FOR THE OFFENSES OF RAPE AND ATTEMPTED SODOMY.

For the reasons set forth herein, we affirm the decision of the court below.

## FACTS

### A.

On July 19, 1995, appellant's 13–year–old stepdaughter, C, told her mother that appel-

CRAWFORD, C.J., announced the judgment of the Court and delivered an opinion in which COX, S.J., joined. SULLIVAN, J., filed an opinion concurring in part and in the result, in which EFFRON, J., joined. GIERKE, J., filed an opinion concurring in part and in the result.

lant had engaged in sexual intercourse with her 1 day earlier. This prompted appellant's wife to notify the military authorities, who, in turn, contacted the civilian child welfare authorities in Fayetteville, North Carolina. Appellant was arrested and charged with sexual offenses and incarcerated pending trial. He pled guilty in March 1996 in the North Carolina state court to five felony counts, including incest, indecent liberties with a child, child abuse, and sex acts with a minor by a parental substitute.

Two (rape and sodomy) of the six specifications in this case relate to events that occurred on July 18, 1995. Both appellant and the Government agree that appellant was tried at court-martial for the same offenses he pled guilty to in state court.

At trial, C testified that she had known appellant since 1993, when they were living in Germany. C testified that appellant began sexually abusing her by touching her breasts and bottom, but eventually advanced to digital vaginal penetration that was so painful she would tell appellant to stop. Despite C's request, appellant continued the abuse. According to C's testimony, within a matter of days, the abuse had progressed from digital penetration to appellant's attempted, and ultimately successful, penile penetration. Over a period of time, appellant was able to stretch her vagina so that digital and penile penetration could be accomplished more easily. On many of these occasions, appellant would kiss C's breast and vagina both before and after sex, although there was never any kissing on the lips. C testified that after a time, she started to enjoy the sexual activity and even initiated the contact with appellant on some occasions.

C testified that on July 18, 1995, she approached appellant, who was lying on the couch, and laid across his stomach. Appellant began taking off C's shorts and underwear and then began undressing himself. He requested that C sit atop him in a straddle position to allow penile penetration. After a few moments, appellant carried C upstairs and engaged in sexual intercourse with her.

C's testimony was corroborated by C's mother, who was also appellant's wife. Mrs. Cobia, who was a Specialist in the Army at that time, testified that a few months before the events of July 18th, she whipped C with a belt for repeatedly missing the school bus. After the whipping, Mrs. Cobia asked C if her "husband [had] been having sex with [C]." Mrs. Cobia testified that she had suspected abuse because C had been behaving in "suspicious" ways. C admitted appellant had been abusing her. When Mrs. Cobia confronted appellant with C's revelation, he "[broke] down crying and he was telling me—you know—basically why he did it or what happened—what led up to it, as far as me rejecting him and not wanting to have sex with him, and just not wanting to talk to him." Unsure of what to do, Mrs. Cobia waited for 2 weeks and then reported the incident to Specialist Elam, and later to her First Sergeant. The First Sergeant told her that bringing charges against appellant would delay shipping her vehicle and household goods back to the United States and suggested she wait to pursue this matter until she had returned stateside. Mrs. Cobia testified that for these reasons, she did not act on C's allegations. On July 10, 1995, she started working at her new assignment in Fayetteville, North Carolina, but had not yet made a report of the abuse to authorities.

Mrs. Cobia also testified as to the events leading up to her report of appellant for sexually abusing C on July 18, 1995. Mrs. Cobia stated that when appellant and C picked her up from work on July 18, the expression on their faces told her something was wrong. After finding C's bath towel in the bathroom still wet in the middle of the day (one of the odd behaviors that had aroused her suspicions of abuse in the first place), she confronted C, who broke down and started crying. C admitted that appellant had engaged in sexual intercourse with her earlier that morning. When Mrs. Cobia again confronted appellant and ordered him to leave the house, he began blaming the abuse on C, telling his wife "that she went to him—she came to him." Mrs. Cobia reported the incident to her supervisor and her

Command Sergeant Major and then took C to the hospital for an examination.

C was examined by Colonel (Dr.) Sharon Cooper, who testified that C told her appellant had started touching her breast and bottom at age 11. Colonel Cooper testified that C admitted appellant had sex with her and that, for several months, sexual intercourse with appellant was very painful. Colonel Cooper also testified that such pain during intercourse is "very characteristic of [prepubertal] children who do not have estrogen and vaginal mucosa."

A physical examination of C revealed an old tear wound in the hymenal tissue and internal vaginal tissues that resembled those of a very sexually active woman. Colonel Cooper testified that this finding in a 12–to–14–year–old is "extremely abnormal," and usually means the patient has suffered "significant, repetitive, penetrating injuries." Dr. Cooper testified as to the question of physical force as follows:

> What this child describes is sexual abuse that begins first with touching, and then gradually becomes more and more detailed and finally culminates in full sexual intercourse which, after a while, becomes initiated by the child victim, is a—is right out of a textbook. That's very classic, for a child who has not been dramatically traumatized by what has happened to them, but who has been groomed. The term that the literature used is—uses is groomed. Children, in this age group—as a matter of fact, in my experience, I have never heard a child say to me, in an intrafamilial case, that, "He forced me to do this." It's more common to see that term "forcing" used when the perpetrator is outside of the family, as compared to in the family. The reason for that, oftentimes, according to the literature, is the feeling that children have an absolute respect for the authority of parents; and, if a parent tells you to do something, children don't refer to that as being forced to do it. They refer to it as being told to do something. They usually

will do it, they'll follow through, because of the authority of that position.

## B.

At a pretrial session under Article 39(a), UCMJ, 10 USC § 839(a), defense counsel moved to suppress references to appellant's prior North Carolina convictions, either as substantive evidence or as impeachment of appellant.

> Defense counsel also asserted that, as North Carolina had no allocution requirement for guilty pleas, the probative value of the conviction was limited. He posited that Appellant may have accepted a plea bargain with its attendant limited sentence rather than risk a much longer prison sentence if convicted after a contested trial.

Final Brief at 6. During this motion, appellant did not deny commission of the acts in question. The judge ruled that the convictions were not admissible under Mil.R.Evid. 404(b), Manual for Courts–Martial, United States (1995 ed.),[1] but could be admitted for impeachment purposes. He stated:

> This court holds that this conviction can be used to impeach the accused.... This court finds that the impeachment value of this conviction is exceptionally high, particularly given the fact that the North Carolina conviction is for the same type of sexual offenses of which the accused is charged at this court-martial.
>
> Additionally, the conviction involves the same alleged victim and part of the same time period as the charges before the court-martial. Although the similarity and the crimes that are the subject of the conviction and that are before this court-martial, ordinarily would be a factor that would weigh against the admission of the conviction.
>
> I find that the fact that the accused pled guilty to the State charges to be a factor very inconsistent with innocence—akin, perhaps, to a confession to several of the offenses charged at this court-martial. Therefore, I find that the probative value

---

1. All Manual provisions are cited to the version applicable at trial. The 1998 version is un-

changed, unless otherwise indicated.

of the conviction far outweighs a danger of unfair prejudice to the accused. This is particularly the case, where, as it appears here, the credibility of the accused and the witnesses who may testify against him, appears central to a determination of the issues in this case. I make this finding even though the accused's testimony may be of critical importance to the defense theory of its case.

During the defense case-in-chief, and near the end of appellant's testimony, the transcript of appellant's guilty plea in the North Carolina court was admitted into evidence as Defense Exhibit E. The defense used this transcript to bring into question the validity of the guilty pleas. In explaining his prior conviction, appellant stated the proceedings took only 10 minutes, and he did not fully understand the questions to which he responded. He testified that he pled guilty because no one would talk to him, and he felt he was being "steamrolled." Additionally, the North Carolina judge who accepted his plea did not conduct a factual inquiry concerning any incidents with C. Despite appellant's attempt to cast a pall on his guilty pleas, he testified during cross-examination that his statements made during the guilty plea in the civilian trial were truthful.[2]

As part of the guilty plea in Cumberland County, North Carolina, appellant stated under oath that he "read or . . . heard all [the] questions [concerning his plea] and underst[ood] them" and correctly answered them as part of his guilty plea inquiry. His admissions included that he understood the "nature of the charges" that had been explained to him by his lawyers; that his "attorney discussed [with him] the possible defenses"; and that he was "satisfied with [his] lawyer's legal services." With that advice, he personally pled guilty because he was "in fact guilty." He had the option of making a plea of no contest, which would not admit guilt, but opted against that.

Appellant pled guilty to five offenses, including taking indecent liberties with a child. In connection with this offense, appellant admitted that he willfully took indecent liberties with a child for the purpose of arousing and gratifying his sexual desire and that this indecent liberty was an improper or indecent act. He also admitted that he abused the child and thereby intentionally inflicted a serious physical injury on the child or intentionally assaulted the child which proximately resulted in serious physical injury to the child.

Appellant now contends that the judge erred in admitting this evidence under Mil. R.Evid. 609(a)(1).

## DISCUSSION

 The standard of review as to Issue I, the admissibility of appellant's prior convictions, is whether the judge abused his discretion. *See, e.g., United States v. Sitton,* 39 MJ 307 (CMA 1994). The standard of review for the sufficiency of the evidence, Issue II, is *de novo.* The test for sufficiency is whether the evidence, when viewed in the light most favorable to the Government, and the reasonable inferences from the evidence support the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The issues in this case are intertwined with the credibility of the witnesses for both sides since, during the defense case-in-chief, appellant denied that he ever had sexual intercourse with or sodomized C on any occasion and testified that he never touched her inappropriately.

### A.

 As to the admission of the prior conviction, this case is controlled by *Ohler v. United States,* ——— U.S. ———, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000). In *Ohler,* the defendant's *in limine* motion to prevent the Government from using a prior conviction for

---

2. After determining that appellant fully understood his rights and the charges against him, the North Carolina judge asked appellant if he personally pled guilty to the offenses stated. Appel-

lant responded in the affirmative. The judge then asked, "Are you in fact guilty?", to which appellant answered, "Yes."

impeachment was denied. During the defense case-in-chief, Ohler testified on direct examination as to the prior conviction to remove its sting. Based on this testimony, the Court held that Ohler "cannot complain on appeal that the evidence was erroneously admitted." *Id.* at 1853.

■ The Court rejected the argument that it would be unfair to apply waiver "because it compels the defendant to forgo the tactical advantage of preemptively introducing the conviction in order to appeal the *in limine* ruling." *Id.* The Court dismissed the argument that a defendant in a criminal case is disadvantaged, stating that each side "must make choices as the trial progresses." *Id.* at 1854. The defendant must decide whether to take the sting out of the prior conviction or to gamble whether the prosecution will seek to impeach the defendant with the prior conviction. "[T]he Government has one inherent advantage," because it "need not make its choice until the defendant has elected whether or not to take the stand in [his] own behalf and after the Government has heard the defendant testify." *Id.* However, once the defendant "preemptively introduces evidence of a prior conviction on direct examination [he] may not on appeal claim that the admission of such evidence was error." *Id.* at 1855. Likewise, appellant may not make such a claim.

■ Nor can the defense claim the facts of appellant's previous conviction are collateral, as the evidence supports the victim's testimony as to the elements in question. *United States v. Lambert,* 463 F.2d 552, 556–57 (7th Cir.1972)(facts not collateral); *United States v. Schennault,* 429 F.2d 852, 855 (7th Cir. 1970); *see also* 3A *Wigmore on Evidence* §§ 1000 to 1007 at 956–81. (Chadbourn rev. 1970).

## B.

Appellant's prior conviction could have been introduced as substantive evidence, which would have increased its probative value since it would not be limited to the credibility issue. Specifically, we recognized in *United States v. Gray,* 51 MJ 1, 25 (1999), that "[g]uilty pleas and accompanying state-ments in one jurisdiction are generally admissible in other jurisdictions to prove the elements of other crimes."

■ This theory of contradiction as impeachment finds its roots in the common law theory of relevance. Wigmore, *supra* §§ 1003 and 1004 at 961–66. Mil.R.Evid. 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact ... more or less probable tha[n] it would be without the evidence." Certainly, admitting guilt for committing the "same acts" as currently charged is relevant to the current case. Therefore, the transcript of appellant's North Carolina plea to similar offenses on the same dates is relevant and not collateral. The transcript is also admissible as a prior inconsistent statement under Mil.R.Evid. 613 or an admission under Mil.R.Evid. 801(d)(2).

■ Appellant's complete denial of the commission of any of the acts comprising the charges against him at his court-martial opened the door for contradictory evidence. Wigmore, *supra.* When Witness 1 testifies as to fact A, and Witness 2 testifies as to fact B, B is admissible, provided the facts are not collateral.

In *United States v. Lyon,* 15 USCMA 307, 312, 35 CMR 279, 284 (1965), this Court held that "contradiction for the purpose of impeachment alone is to be distinguished from proof of other acts of misconduct in connection with the merits of the controversy presented to the court-martial. If such misconduct be relevant and material, it is provable directly and quite without regard to whether the persons involved therein denies its commission." Similarly, in *United States v. Cottle,* 14 MJ 260, 265 (CMA 1982), we held that "[w]e have thus recognized an exception to the rule preventing the introduction of collateral evidence solely to attack the credibility of a witness where the evidence goes to the matter at issue and could be introduced independently of the contradiction of the testimony of the witness." *See McCormick on Evidence* § 45 at 184 (5th ed.1999). Considering these cases, it becomes apparent that the purpose of a trial is truthfinding, as illusive as that might be. Thus, it is permissible to

contradict the testimony of a witness with relevant facts in order to facilitate the search for truth by the members.

Thus, questions about appellant's prior guilty plea were relevant and admissible to impeach appellant by contradiction.

### C.

■ As to issue II, there is no evidence of a coerced plea, or a plea in the absence of counsel. The questions and answers by appellant at the state hearing at least support a reasonable inference that the victim was telling the truth. While Defense Exhibit E undercuts the defendant's theory of the case, it is not substantive evidence as to all the offenses. The victim's testimony, along with the corroborating testimony of the victim's mother and the expert testimony of Colonel Cooper, supports the findings in this case. Thus, we hold that the evidence is sufficient to support the verdict.

The decision of the United States Army Court of Criminal Appeals is affirmed.

SULLIVAN, Judge, with whom EFFRON, Judge, joins (concurring in part and in the result):

I agree with the majority that the recent decision of the Supreme Court in *Ohler v. United States*, —— U.S. ——, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000), controls this Military Rule of Evidence 609 case. However, *Ohler* was not decided at the time this appeal was argued at this Court. Assuming it inapplicable, I would still vote to affirm this conviction.

The military judge in this case admitted evidence of appellant's guilty plea convictions in state court for the same offenses he was being tried for at court-martial. He admitted this evidence for the express purpose of "impeach[ing] the accused *on the basis of the cases just cited.*" (R. 79–80). Those cases were *United States v. Brenizer,* 20 MJ 78 (CMA 1985), and *United States v. Sitton,* 39 MJ 307 (CMA 1994). These are Military Rule of Evidence 609 cases (impeachment by evidence of conviction of a crime). Accordingly, I would limit my review in this case to the propriety of the admission of the challenged evidence for the purpose it was actually admitted by the trial judge (impeachment by prior convictions).

Turning to the trial judge's decision in this regard, I have some concern with his reasoning that the probative value of admitting this evidence for this purpose outweighed its prejudicial effect. *See* Mil.R.Evid. 609. A number of federal courts have found that evidence of this type presented to a jury was clearly more prejudicial to an accused on his substantive guilt than probative of his credibility. *See United States v. Martinez,* 555 F.2d 1273 (5th Cir.1977); *United States v. Maestas,* 941 F.2d 273, 279 n. 7 (5th Cir. 1991); *United States v. Denetclaw,* 96 F.3d 454, 460 (Lucero, C.J., concurring) (10th Cir. 1996); *cf. United States v. Moore,* 735 F.2d 289, 293 (8th Cir.1984). I think military case law has also recognized the extraordinary prejudicial impact of evidence of convictions of offenses which are the same as the ones charged. *See United States v. Brenizer, supra* at 81.

Nevertheless, this was a trial before a military judge alone, which appellant requested after the military judge indicated he would admit the challenged evidence. *See Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *United States v. Gee,* 39 MJ 311 (CMA 1994). Here, the military judge admitted this evidence for the limited purpose of impeachment by prior convictions, and he expressly refused to consider it for substantive purposes. *See* Mil. R.Evid. 105. I presume military judges know the law and will do what they say. *See generally United States v. Kinman,* 25 MJ 99, 100–01 (CMA 1987). Accordingly, in light of the defense's decision to have a trial by judge alone, I see little chance of undue prejudice in this case and would find no error under Mil.R.Evid. 609.

GIERKE, Judge (concurring in part and in the result):

I agree with the result in this case. I also agree with the majority's conclusion that the evidence was admissible as a prior inconsistent statement under Mil.R.Evid. 613 or as

an admission under Mil.R.Evid. 801(d)(2). Finally, I agree with the majority's holding that appellant waived any objection under Mil.R.Evid. 609 by testifying about the conviction on direct examination. We need not decide whether the evidence was admissible under the common law theory of impeachment by contradiction, and I do not join that portion of the majority opinion.