UNITED STATES, Appellee

v.

Carl L. KEY, Airman First Class
U.S. Air Force, Appellant

No. 04-0216

Crim. App. No. 34965

United States Court of Appeals for the Armed Forces

Argued April 30, 2007

Decided June 22, 2007

STUCKY, J., delivered the opinion of the Court, in which BAKER
and ERDMANN, JJ., joined.  RYAN, J., filed a separate opinion
concurring in part and dissenting in part and in the result, in
which EFFRON, C.J., joined.


Counsel


For Appellant:  Captain Griffin S. Dunham (argued); Major John
N. Page III (on brief); Lieutenant Colonel Mark R. Strickland.


For Appellee:  Captain Jefferson E. McBride (argued); Colonel
Gerald R. Bruce and Major Matthew S. Ward (on brief).

Military Judges:  Rodger A. Drew Jr. and Jennifer A. Whittier
(DuBay hearing)


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**

Judge STUCKY delivered the opinion of the Court.

Officer and enlisted members convicted Appellant at a general court-martial of the wrongful use of ecstasy, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000), and sentenced him to a bad-conduct discharge and reduction to the lowest enlisted grade. Subsequently, Appellant's trial defense counsel, Major Martin, learned that the Air Force Office of Special Investigations (AFOSI) paid an informant, Staff Sergeant (SSgt) L, after she testified in four courts-martial, including Appellant's. Appellant requested post-trial discovery. On March 10, 2005, this Court returned Appellant's case to the Judge Advocate General of the Air Force for a post-trial hearing to determine whether Appellant was entitled to a new trial. United States v. Key, 61 M.J. 52 (C.A.A.F. 2005). After the post-trial hearing, the United States Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Key, No. ACM 34965 (f rev), 2006 CCA LEXIS 182, 2006 WL 2284811 (A.F. Ct. Crim. App. Jul. 12, 2006) (unpublished). We granted review to consider whether the military judge erred at the post-trial hearing by preventing Appellant's trial defense counsel from testifying. We hold that the military judge erred, but the error was not prejudicial. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).

I.

In April 2001, as part of a unit drug inspection, Appellant provided a urine specimen for testing. Testing of the specimen confirmed Appellant had ingested 3,4-methylenedioxymethamphetamine, a Schedule I controlled substance commonly known as ecstasy. Appellant was charged with the wrongful use of that controlled substance. Article 112a, UCMJ.

From his opening statement and continuing throughout the trial, Major Martin challenged the reliability of the specimen collection and drug testing process, and raised the defense of innocent ingestion. Appellant's girlfriend eventually testified that, after consuming a large quantity of whiskey, Appellant became ill and complained of a headache. She said that she obtained what she thought was aspirin from a bar patron and gave it to Appellant.

To counter the unknowing ingestion defense, the Government called Staff Sergeant (SSgt) L, who was working as an undercover informant for the AFOSI. She was one of three witnesses who testified to Appellant's nervous and agitated demeanor at the specimen collection site. SSgt L also testified that, approximately three weeks before the unit was tested for drugs, she had a telephone conversation with Appellant in which he admitted having ecstasy and invited her to meet him at another airman's apartment to partake of the drug. She decided not to

meet with Appellant after her AFOSI handler told her they would not be able to support her at that time.

Major Martin vigorously cross-examined SSgt L, including asking about any compensation she received from AFOSI:

> Q:   Did [AF]OSI ever just give you money so that you could go out and club hop?
>
> A:    Well, when you say give me money, you sound like as if they were paying me.  They gave me money because I had to pay a babysitter, and also if I had to buy drinks for whoever was around, yes, I did get money for those things.
>
> Q:   Okay, on more than one occasion?
>
> A:   Yes, to assist with the investigation.

Major Martin also submitted documents indicating that AFOSI paid SSgt L a total of $206.25.  Appellant was sentenced on October 24, 2001.  On April 2, 2002, well after SSgt L had completed her testimony in four courts-martial (including this one), AFOSI paid her $250.

Several months after the trial ended, Major Martin, who was then assigned as an attorney in a base legal office, learned that the AFOSI had paid SSgt L money, in addition to reimbursement expenses, for her work as a confidential informant.  On direct appeal to the Air Force court, Appellant asked for post-trial discovery "to determine if SSgt [L] was paid for her testimony at . . . trial."  After analyzing the issue under the standards we established in United States v.

4

Campbell, 57 M.J. 134, 138 (C.A.A.F. 2002), the court denied the request for post-trial discovery and affirmed the findings and sentence.  United States v. Key, No. ACM 34965, 2003 CCA LEXIS 260, 2003 WL 22495833 (A.F. Ct. Crim. App. Oct. 29, 2003) (unpublished).  Appellant appealed.

On November 2, 2004, this Court ordered the Government to produce vouchers of all payments made by AFOSI to SSgt L, pertinent regulations governing such payments, and affidavits from the responsible AFOSI agent and SSgt L.  United States v. Key, 60 M.J. 387, 387-88 (C.A.A.F. 2004).  SSgt L's December 16, 2004, affidavit reads, in pertinent part, as follows:

> 2.  At the beginning of the cases [AF]OSI asked me if I wanted to work for them and that they would pay me to do so.  I said no.  Somehow, getting money for doing the right thing didn't feel right; it made me uncomfortable.  As the case went along, I was given money on at least 3 different occasions.  The first time I was given cash was to buy drinks at the bar and to get into the club; I ended up using the money for my first drug buy that was then immediately turned into the OSI.  The second time I was given money to buy drugs, it was $80.  The last time I was given money, it was to buy a large amount of drugs.  That was when everyone was arrested.
>
> 3.  During the time that I was working for [AF]OSI, I was informed by [AF]OSI, that I could get reimbursed for baby-sitting fees; I did not file for anything.  It felt very uncomfortable to do so.  When everyone was punished, I did receive a surprise from [AF]OSI, they gave me some money, and I signed for it.  I wasn't sure why, I was told it was for a job well done.

5

On March 10, 2005, this Court concluded that "it appears that post-trial discovery would have produced information relevant to whether Appellant should be granted a new trial and that additional discovery is necessary." United States v. Key, 61 M.J. 52, 52 (C.A.A.F. 2005). We returned the case to the Air Force Judge Advocate General for a post-trial hearing to determine whether Appellant was entitled to a new trial. Id.

SSgt L testified at the post-trial hearing that an AFOSI agent, who had since retired, offered her money when she started to work for AFOSI. She reiterated her trial testimony that, during the investigation, she received small sums of money for gas, babysitting fees, and to pay for drinks. She asserted that, during a pretrial interview, she had advised the trial defense counsel about the monies she had received from the AFOSI. She claimed she had not mentioned the offer of a monetary reward because she had turned it down, did not think it was relevant at the time, and the defense counsel had asked about monetary payments, not offers. One of the two AFOSI agents who initially met with SSgt L testified that they did not offer SSgt L any reward money at the initial meeting.

At the hearing, Appellant's counsel tried to call Major Martin to the stand to testify.[1] When questioned by the military

---

[1] Appellant was represented by different counsel at the post-trial hearing.

judge who presided over the post-trial hearing as to the relevance of Major Martin's testimony, Appellant's counsel claimed it was relevant because the purpose of the hearing was to determine SSgt L's credibility.  The military judge refused to permit Major Martin to testify.

Before the Air Force court, Appellant claimed the military judge erred at the hearing and moved to submit an affidavit from Major Martin specifying what his testimony would have been had he been granted an opportunity to present it.  Major Martin's affidavit reads, in pertinent part, as follows:

> While I cannot recall exactly how I phrased the questions, or if I used the term "offer" or "offered" in the phrasing, I am certain that I thoroughly covered the issue of compensation with [SSgt L] during the interview.  Although I can not recall the wording of the questions I posed on this issue, my questions were designed such that responsive answers would have elicited from [SSgt L] that the [AF]OSI had offered to pay her.  I was very sensitive to determining whether and to what extent the [AF]OSI might be compensating [SSgt L] after considering the Government Counsel's ambiguous verbal answer on the same point.

The Air Force court granted Appellant's motion to admit the affidavit.  Upon considering the affidavit, the Air Force court viewed the exclusion of Major Martin's testimony as moot.

The Air Force court then applied Rule for Courts-Martial (R.C.M.) 1210(f) to determine whether Appellant was entitled to a new trial.  The court concluded that SSgt L was aware of the possibility of receiving an incentive payment prior to engaging

in informant activities and before testifying at Appellant's trial, that Major Martin exercised due diligence in attempting to seek this information, and that the information was relevant to Appellant's defense at trial to impeach SSgt L by establishing a possible financial motive for her to testify against Appellant. Nevertheless, the court held that:

> In view of the overall solid evidence concerning the urinalysis testing, the demeanor evidence from witnesses other than SSgt L, and the relatively minimal impact the newly discovered evidence would have had in impeaching SSgt L's testimony concerning the telephone conversations involving the appellant, the newly discovered evidence fails to meet the criteria set forth in R.C.M. 1210(f) and the precedent of our superior court. We therefore conclude that it is not probable, in light of all other pertinent evidence, that the newly discovered evidence would have produced a substantially more favorable result for the appellant. The appellant is not entitled to a new trial.

Key, 2006 CCA LEXIS 182, at *15-*16, 2006 WL 2284811, at *5.

## II.

The granted issue is whether the military judge erred by not allowing Major Martin to testify at the post-trial hearing. Although the Air Force court did not explicitly so hold, it granted Appellant's motion to submit Major Martin's affidavit and considered it in determining whether Appellant was entitled to a new trial.

8

                              III.

     The post-trial hearing was ordered so that the military
judge could determine whether Appellant was entitled to a new
trial.  In this case, that necessarily included a determination
as to whether SSgt L withheld relevant information from the
defense that affected the outcome of Appellant's trial.  The
defense claimed that SSgt L purposely withheld information that
AFOSI paid her for her testimony.  In her findings of fact, the
military judge found that the testimony as to when SSgt L was
first offered a reward was inconsistent, but basically
irrelevant because SSgt L did not expect payment and was not
paid until after all four trials:  "Based on the lack of
relevance of the proffered purpose for Maj Martin's testimony to
the factual issues at the hearing, the likelihood of confusion,
and the concerns that would be raised by the trial defense
counsel testifying, the court denied the defense request to call
Maj Martin."

     Major Martin's testimony as to what transpired during that
interview was relevant to a determination of SSgt L's
credibility and whether she purposely withheld impeachment
evidence from the defense.  The military judge failed to explain
why, or to whom, such testimony would be confusing -- that
testimony was supposed to assist the military judge and the
appellate courts in determining whether Appellant was entitled

                               9

to a new trial. The military judge's apparent concern for the attorney-client privilege was misplaced. She failed to explain how Major Martin's pretrial interview of SSgt L involved matters protected by the attorney-client privilege and, to the limited extent necessary for resolution of this issue, whether Appellant would have waived the privilege, if necessary.

We hold that the military judge erred by refusing to permit Major Martin to testify at the post-trial hearing. By considering only SSgt L's testimony concerning the pretrial interview, the military judge unduly restricted the ambit of the post-trial hearing.

## IV.

Having found error, we must determine whether the error was prejudicial. Article 59(a), UCMJ. Accepting Major Martin's affidavit at face value does not significantly impeach SSgt L's testimony. It is not at all clear that Major Martin would have testified that he specifically asked SSgt L if the AFOSI had offered to pay her, rather than whether or not she was being paid. The only evidence that SSgt L was offered a financial incentive before she started to work as an informant comes from SSgt L's own testimony and affidavit. She testified that she turned the offer down and was surprised when AFOSI presented her with an award after she had testified in four trials. There is no evidence to contradict her testimony on this matter. That

10

she had knowledge, without more, of the eventual possibility of being paid for her work as an informant had limited impeachment value, especially when it is not clear from his affidavit that Major Martin's questions were specific enough to elicit that she had.

In light of all the other pertinent evidence, (including the testimony of other witnesses as to Appellant's demeanor at the collection site and the urinalysis evidence itself), we conclude the military judge's error in refusing to permit Major Martin to testify at the post-trial hearing was harmless -- it did not substantially influence the outcome of the case. See United States v. Clark, 62 M.J. 195, 200 (C.A.A.F. 2005).

V.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Key, 04-0216/AF

RYAN, Judge, with whom EFFRON, Chief Judge, joins (concurring in part, and dissenting in part and in the result):

This Court ordered a post-trial hearing in accordance with United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967), to develop a factual record for use in determining whether Appellant was entitled to a new trial based on newly discovered evidence. United States v. Key, 61 M.J. 52 (C.A.A.F. 2005). Appellant claimed that the evidence would show that a key Government witness, Staff Sergeant (SSgt) L, received post-trial incentive payments for her duties as an informant. The DuBay hearing judge acknowledged in her findings of fact that the purpose of the hearing was "to determine the circumstances of a post-trial award/incentive payment to determine whether the appellant should receive a new trial."

To succeed on a motion for new trial, a defendant must show, inter alia, that there is new evidence that was neither known, nor capable of being known, by the defense at the time of trial. Rule for Courts-Martial (R.C.M.) 1210(f)(2)(B). Appellant claims that he could not have known about the incentive payments because SSgt L purposely withheld information from trial defense counsel. Because of this allegation, the testimony of both trial defense counsel and SSgt L should have been pivotal to the hearing. Yet the DuBay hearing judge neither permitted nor considered trial defense counsel's

testimony, which would have contradicted the testimony of SSgt L.

I concur in that part of the majority opinion that concludes the DuBay hearing judge erred by refusing to permit Major (Maj) Martin, the trial defense counsel, to testify at the post-trial hearing. But I respectfully dissent from the majority's resolution of the case because I would remand the case with orders for a new DuBay hearing. Appellant received neither the DuBay hearing that this Court ordered, nor full and proper consideration of whether he is entitled to a new trial under the standard set forth in R.C.M. 1210(f).

The DuBay hearing findings of fact are problematic because they rest upon the unquestioned credibility and unrebutted testimony of SSgt L. The lower court, in turn, erred by: (1) resolving factual conflicts between SSgt L's testimony and affidavit and the affidavit that it accepted from Maj Martin; and (2) relying on the DuBay hearing judge's findings of fact regarding SSgt L's credibility. See United States v. Ginn, 47 M.J. 236, 243 (C.A.A.F. 1997) ("Article 66(c) does not authorize a Court of Criminal Appeals to decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties."); see also United States v. Murphy, 50 M.J. 4, 11 (C.A.A.F. 1998) (rejecting a judgment of credibility based on "the questionable

practice of resolving pure disputes of material fact by mere affidavits"). In light of these procedural errors, in my view the lower court abused its discretion in reaching the ultimate issue of whether Appellant was entitled to a new trial.

Additionally, it is not at all clear to me that the newly discovered evidence could not "probably produce a substantially more favorable result for the accused." R.C.M. 1210(f)(2)(C). While the lower court marshals other evidence of Appellant's guilt, much of it revolves around the urinalysis. But, in this case, the issue was not whether metabolites could be found in Appellant's urine, but how they got there. Appellant's defense was innocent ingestion, and evidence in support of that defense was presented. The significance of SSgt L's rebuttal testimony about Appellant's alleged phone call regarding drugs, and putative phone message about drugs, cannot be discounted. Nor can one separate any motive SSgt L might have had to lie from its impact on her credibility.

Operating on incomplete information, the DuBay hearing judge made specific findings that SSgt L was credible and that any inconsistencies in her testimony, or failures to be forthcoming to the defense, were not motivated by calumny. The lower court relied on SSgt L's affidavit and her DuBay testimony. In doing so, the lower court further assumed that

the DuBay hearing judge's finding of fact regarding the genesis of any inconsistencies in SSgt L's testimony was correct.

On this record, I cannot subscribe to the lower court's assertion that the probative value of evidence "is diminished by virtue of [SSgt L's] likely testimony that she refused the initial offer of an incentive payment and that she was 'shocked' when the agents provided her additional cash at the termination meeting." United States v. Key, No. ACM 34965, 2006 CCA LEXIS 182, at *15, 2006 WL 2284811, at *5 (A.F. Ct. Crim. App. July 12, 2006) (unpublished). Appellant asserts that SSgt L did not forthrightly respond to trial defense counsel's questions regarding incentive payments. The probative value of this information is diminished only if one accepts that SSgt L is credible. That there is an incomplete factual record on that very issue is obvious.

Given this vacuum, I am not prepared to say that evidence that an informant was offered payment before trial, purportedly rejected it, and then, paradoxically, accepted it after trial, could not cast doubt upon her credibility, let alone her entire testimony. The members, if aware of SSgt L's failure to disclose the possibility of incentive payments could have concluded that: (1) she had a financial motive to testify against Appellant in return for payments after his successful conviction; and (2) she misled the defense counsel and could

4

still be misleading them.  See, e.g., Banks v. Dretke, 540 U.S. 668, 698-703 (2004) (concluding that suppression of evidence of the status of a prosecution witness as a paid informant is relevant evidence that may require a new trial); Benn v. Lambert, 283 F.3d 1040, 1054 (9th Cir. 2002) (stating that information demonstrating that a government informant was untrustworthy and deceptive for self-benefiting purpose severely undermines the witness' credibility and must be disclosed); United States v. Levenite, 277 F.3d 454, 460-62 (4th Cir. 2002) (reaffirming that paid informants are subjected to a higher degree of scrutiny as to both weight and credibility, and if the payment is contingent upon testimony at trial, it must be subjected to an even higher degree of scrutiny); see also United States v. Cobia, 53 M.J. 305, 310-11 (C.A.A.F. 2000) (discussing impeachment by contradiction).

In my view, Appellant is entitled to a new DuBay hearing that addresses the circumstances of a post-trial award/incentive payment, including evidence on the credibility of SSgt L, as the factual predicate to a determination whether Appellant should receive a new trial.